563 So.2d 413 (1990)
Edward C. HOBGOOD, et al.
v.
PARISH OF EAST BATON ROUGE, et al. Three Cases
Nos. CA 89 1826 to CA 89 1827, and CA 89 0538.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
*415 Ashton Stewart, Baton Rouge, for plaintiff-appellant Edward C. Hobgood, et al.
Frank S. Craig, III, Baton Rouge, for defendant-appellee East Baton Rouge Parish, et al.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
As part of the stated purpose of improving safety for commercial and private air travelers and reducing noise impact on populated areas, the Greater Baton Rouge Airport District (GBRAD) undertook a multi-year project on the Baton Rouge Metropolitan Airport (MA). This project included a 1200 foot extension of the main northwest to southeast runway designated as runway 13-31, the construction of a new 3500 foot runway designated as 4R-22L, and the general improvement of the main northeast to southwest runway designated as runway 4L-22R. Runways 4R-22L and 4L-22R are both northeast to southwest runways which parallel each other and the designation merely indicates which lies to the left or right facing north. When the project is completed 4R-22L will be for light, general aviation use only and will be available for use only under visual flight rules. It will close when the tower closes from midnight to 6:00 a.m. Commercial traffic will use either 13-31 or 4L-22R with preference assigned to take offs on 13-31 which directs traffic over Exxon's Maryland Tank Farm rather than more populated areas. Runways 4R-22L and 4L-22R affect three parcels of property belonging to the appellants (Hobgoods). Parcels designated 8-C and 9-C are affected by the extension of the main northwest-southwest runway, 4L-22R. A parcel designated E-1 is affected by the new general aviation runway, 4R-22L.
In September of 1988, when the projects were underway but prior to the filing of any expropriation proceeding, the Hobgoods filed a possessory action alleging interference with their peaceful possession of parcel E-1 and asking for an injunction to prohibit air traffic on 4R-22L. Subsequently, a suit was filed with the same object for parcels 8C and 9C for air traffic on 4L-22R and 13-31. The suits were consolidated. After being removed to federal court, and returned to state court, the trial judge denied injunctive relief. The denial of injunctive relief was appealed to this court and on order of the supreme court given expedited hearing. While those matters were pending on appeal GBRAD sued *416 to expropriate a clear zone and avigation servitude on parcels E-1, 8C and 9C. On learning that the expropriation had been allowed prior to disposition of the possessory actions on appeal, we pretermitted deciding the possessory action and ordered consolidation of the possessory action and the expropriation. Hobgood, et al. v. Parish of East Baton Rouge, et al., (La.App. 1st Cir.1989) (Docket No. 89 CA 0538, Decided Nov. 6, 1989). Both matters are now before us on appeal. Four issues are presented: the right of GBRAD to expropriate, the right to injunction in the possessory action, the trial court's instructions, value and severance damages.

THE RIGHT OF GBRAD TO EXPROPRIATE
The Hobgoods argue that the only evidence in the record shows that the airport is owned by East Baton Rouge Parish rather than GBRAD. They further argue that the servitudes sought to be expropriated can only be predial servitudes running in favor of the land. They conclude that the servitudes run in favor of the airport and therefore only the owner of the airport has the right to expropriate the servitudes. This argument has no merit.
We see no purpose in classifying the nature of the servitude taken in this expropriation since it is not pertinent to the validity of the taking. The power of expropriation or eminent domain is the right of the state or its subdivisions to appropriate private property for public purposes. It is inherent in the police power of the state. c.f. Dalche v. Board of Commissioners of Orleans Levee Board, 49 F.2d 374 (E.D.La. 1931). The sovereign may delegate the power of expropriation to the agencies of the sovereign and to public and private corporations. Tennessee Gas Transmission Co. v. Violet Trapping Co., 248 La. 49, 176 So.2d 425 (1965), cert. denied, 382 U.S. 902, 86 S.Ct. 236, 15 L.Ed.2d 155 (1965).
La.R.S. 19:2 provides in part, "Where a price cannot be agreed upon with the owner, any of the following may expropriate needed property: (1) The state or its political corporations or subdivisions created for the purpose of exercising any state governmental powers". Property includes "servitudes and other rights in or to immovable property". La.R.S. 19:1.
The Greater Baton Rouge Airport District was created by La. Act No. 151 (1969). That Act provides:
The District shall have the power to ... own all facilities and all properties incidental and necessary to carry out all purposes of District and powers authorized hereunder, including real and personal, servitudes and rights-of-way (or any combination thereof); to acquire by expropriation, purchase, lease or otherwise said land and other property ...
Although it was not questioned on appeal the right of GBRAD to expropriate was recognized by the trial judge in Greater Baton Rouge Airport District v. Hays, 339 So.2d 431 (La.App. 1st Cir.1976), writ denied 341 So.2d 403 (La.1977). These same defendants were part of that litigation.
We find GBRAD was given the authority to expropriate any necessary servitude for carrying out its functions including the one expropriated herein. This assignment of error has no merit.

THE RIGHT TO INJUNCTIVE RELIEF IN THE POSSESSORY ACTION
This assignment of error is now moot. GBRAD has the right to expropriate. Consequently, the servitude is now owned by GBRAD subject to a determination of just compensation. Under these circumstances there can be no disturbance of Hobgood's possession in fact or in law.

JURY INSTRUCTIONS
Adequate jury instructions fairly and reasonably point out the issues and give the jury the law to apply to those issues. The precise instructions submitted by the litigants do not have to be given if those given correctly reflect the issues and the law applicable to those issues. Fuller v. United States Aircraft Insurance Group, 530 So.2d 1282 (La.App. 2d Cir.), *417 writ denied, 534 So.2d 444 (La.1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1954, 104 L.Ed.2d 424 (1989).
Appellants argue that the trial court erred in refusing to give appellant requested instructions numbered 4, 5 and 7. All of these deal with the rights of the landowner to airspace above the owner's property. Of course, the appellants wanted instructions dealing with these rights as part of the disturbance of possession issue. Consequently, the instructions requested were detailed statements as to the right of the landowner to use and occupy airspace above the owned property. The relevant issue as correctly discerned by the trial court was the right of the landowner to be compensated for the airspace which is taken as part of the avigation servitude and the damage resulting from this taking to the remainder of the property, if any. Along with other instructions the trial court gave the following:
What do you identify to be the fair market value of the taking identified as E1? That's one of the things, one of the pieces of air, that's being acquired in this case. The other one is identified as 8C, the other one as 9C. So there are three different ones. Two possible components of the extent of the loss of the taking of those pieces of air are the market value of the piece of air, what it's worth, and if the taking of the piece of air results in loss to the remainder of the property.
This instruction fairly points out to the jury the landowner's ownership of airspace above the property, the right to be compensated for the taking of that space, and whether the taking of that space injured the remaining property. Consequently, the trial court's instruction covered the correct issues and encompassed that portion of appellants' requested instructions that were appropriate. There was no error in refusing to give requested instructions 4, 5 and 7.
Appellants argue that the trial court erred in refusing to give requested instructions numbered 2 and 3. Instruction number 2 gives a brief definition of a "clear zone" and an "avigation" servitude. Instruction number 3 states that the zoning ordinance of East Baton Rouge Parish does not grant the parish an avigation servitude over the Hobgood property.
The trial judge stated:
No. 2 is the one dealing with clear zone servitudes and avigation servitudes. I do not think it's relevant in this proceeding, and I'm not going to give the jury the distinction because its already been agreed that this is an avigation servitude
. . . .
I don't think it's relevant, right. No. 3, likewise, that deals with (the) zoning ordinance.
We find no error in the ruling of the trial judge. The record reflects that there is no dispute that an avigation servitude is being expropriated. The trial judge specifically instructed the jury, "in this case, it is the expropriation of an avigation servitude". The attorneys defined avigation servitude to the jury at length. There was never a contention that the East Baton Rouge Parish zoning ordinance granted the expropriating authority an avigation servitude. The only time the zoning ordinance was placed at issue was in the testimony of the expert of GBRAD, Mr. Doiron. He considered the zoning ordinance in determining the highest and best use of the property for purposes of valuing the part taken and severance to the remainder. The trial court allowed appellants full latitude to cross examine Doiron as to whether the zoning ordinance should be considered in determining value and damages and to argue the point to the jury. In any event, as will be pointed out hereafter, the jury did not accept valuations reduced by the zoning ordinance. Any error was harmless.
We find no error in the refusal of the trial judge refusing to give requested instructions under 2 and 3.
Appellants cite as error the refusal of the trial court to give requested instruction number 6. That instruction states that when there is an economic depression of a *418 short or extended period of time the market value still should be based on the normal and usual economic conditions of the market. Appellants' expert, Mr. Parnell, used this concept as the basis of his appraisal. GBRAD expert, Doiron, did not accept this principle as valid. The trial judge found that experts differed on this view and an instruction would be a comment on the evidence as to which expert the jury should accept. We find no error in this ruling.
The trial court refused to give requested instruction number 9 because it was generally included in the court's charge and was not totally correct in stating that the most reliable and approved method for determining market value is comparable sales. The trial court pointed out that circumstances in a particular case might refute the use of this method and then it would be a matter of argument as to which expert's testimony to accept. We find no error.
Requested instruction number 10 points out that a judgment of expropriation and a sale between a willing buyer and seller may be comparable. As pointed out by the trial court this evidence was allowed for the jury to give the weight it felt warranted. For the trial court to specifically comment on that particular evidence would be no different than commenting on another comparable sale used by the expert in the appraisal. Neither is appropriate. There is no error in denying requested instruction number 10.
Requested instructions 6, 9 and 10 seem to relate to a theory of appellants that since appellants were not a willing seller at the time of expropriation, at least in part because it was not a good economic time to sell due to depressed value, the comparables should be from good economic times. Transitory depressed valuation is a matter of judgment of the experts in reaching value. Impeachment through cross-examination, differing opinions and argument to the jury is appropriate. It is not appropriate for the trial court to single out a particular theory and instruct the jury as to that theory as a matter of law.
We find no error in refusal to give proposed instruction number 12 which relates to the effects of fear of danger to market value of remaining property. An expert may deem this factor important in determining market value while another expert may have a different opinion. The jury must be convinced by testimony and argument to accept or reject a particular theory. The trial court should not instruct the jury on the theory to be accepted as a matter of law. It is enough if the parties are allowed to present the evidence as their theory of what the jury should do, which was done in this case.
The trial court rejected requested instruction number 15 because it was incorrectly couched in terms of additional expropriation of entire tracts. Additionally, if that error was eliminated, the fact that additional severance damages from the last taking are compensable even though severance damages were granted for a taking in 1974, were covered by the general instruction. We find no error in this conclusion.

VALUE OF SERVITUDES TAKEN AND SEVERANCE DAMAGES
The jury awarded $45,000 for the avigation servitude on parcel E-1, and $10,000 for severance damages to the remainder for the taking of E-1. The jury awarded $200,000 for the taking of parcel 8-C and $95.00 for the taking of parcel 9-C. No severance damages to the remainder was awarded for the taking of parcels 8-C and 9-C. Appellants argue that due to the erroneous instructions of the trial court the jury's verdict should be impeached and we should do a de novo review on the questions of valuation and damages. Since we do not find the instructions given erroneous, nor the failure to give requested instructions to be error the verdict of the jury on value and damages will not be set aside absent manifest error. State, Department of Highways v. LeBlanc, 388 So.2d 412 (La.App. 1st Cir.1980). This is especially true in the valuation of property.
The courts and text writers all agree that in the matter of estimating values more *419 discretion is vested in the fact-finding tribunal in condemnation proceedings, and correspondingly less authority is vested in the appellate courts in such cases, than there is in ordinary civil suits. The reason for the rule, of course, is that a jury of freeholders in a condemnation suit is regarded to some extent as a commission of experts on valuations. (citations omitted)
Housing Authority of Shreveport v. Harkey, 200 La. 526, 8 So.2d 528, 530 (1942) (Citations omitted) (quoting Housing Authority of New Orleans v. Polmer, 195 La. 608, 197 So. 247, 248 [1940]).
At trial Mr. Doiron, the appraiser for GBRAD valued the part taken of 8-C at $34,374. He valued 9-C at $95.00 and E-1 at $23,718. He estimated severance damages to the remainder from the taking of E-1 at $7,630 and found no severance damages from the taking of 8-C and 9-C. In 1987, Doiron appraised the parcels for offers to the landowners. At that time he valued the taking of parcel 8-C at $208,000, and the taking of E-1 at $45,000. The difference in Doiron's valuations in 1987 and 1989 appears mainly to be the application of the Airport Zoning Ordinance to limit use of the property in the 1989 appraisal, while that ordinance was not applied in the 1987 appraisal. The jury apparently accepted the 1987 appraisal for 8-C, the valuation of the part taken of E-1 according to the 1987 appraisal, the severance estimated as a result of taking E-1 according to the 1989 appraisal, and the value of 9-C according to the 1989 appraisal. Thus, the verdict of the jury was based on evidence submitted as to valuation of severance even though partially from one appraisal and partially from another. Consequently, it is not manifestly erroneous. See State, Dept. of Highways v. Romano, 316 So.2d 129 (La.App. 1st Cir.1975).
Appellants' real dispute appears to be the award of $10,000 severance to the remainder for the taking of E-1, and the failure of the jury to make any award for severance for the taking of 8-C and 9-C. A close review of the record reveals evidence to support the jury's verdict although there is a slight discrepancy between the $10,000 severance awarded and the $7,630 testified to by Doiron. Appellants' evidence consist of the testimony of several experts as to noise above the effected tracts and the effects of noise on the ability of people to function in these areas. Appellants conclude that as a result the property must be damaged because the highest and best use is reduced from commercial and residential to agricultural. Mr. Parnell gave an opinion of the value of the tract for agricultural purposes as opposed to commercial and residential. However, he testified as follows:
Q. Now your second appraisal. I asked you do you have any opinion as to the severance damages that resulted from the taking. And what was your answer?
A. As I recall, I said no.
Q. So you have no opinion?
A. Right.
Q. Now, and you did not do a before and after appraisal, did you?
A. That's correct.
The jury had evidence that in the original airport expropriation the Hobgoods were paid for reduced value of the property as a result of airplane noise. There was further evidence that the new taking will not increase that noise. There was no before and after valuation by appellants' expert.
Severance damages are normally calculated as the difference in value of the remaining property before and after the taking. State, Department of Transportation & Development v. Caroline Atkins Crawford Business Trusts, 538 So.2d 1078 (La.App. 3rd Cir.) writ denied, 542 So.2d 1381 (La.1989). The landowner has the burden of proving severance damage. State, Department of Transportation & Development v. Estate of Clark, 432 So.2d 405 (La.App. 1st Cir.1983). The jury can weigh the testimony of the experts. If the jury's findings are supported by the testimony they will not be overturned as manifestly erroneous. State, Department of Transportation & Development v. Estate of Clark, 432 So.2d at 409. There was support in the evidence for the jury's verdict. *420 We therefore decline to find it manifestly erroneous.
The judgment of the trial court based upon the jury verdict is affirmed. All costs are to be paid by appellants.
AFFIRMED.