623 So.2d 651 (1993)
Jewel HOYT, Individually and as Administrator of the Estate of the Minor Michael Hoyt
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
Milton J. WATTS and Gregory T. Watts
v.
AETNA CASUALTY AND SURETY COMPANY.
Nos. CA 92 0750, CA 92 0751.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
Opinion Granting Rehearing in Part and Denying Rehearing in Part September 14, 1993.
*653 Steve Dittman, Bob Ates, New Orleans and Paul Billingsly, Hammond, for plaintiff-appellant Jewel Hoyt.
*654 Karen Eddleman, Baton Rouge, for Milton and Gregory Watts.
Richard Thomas, Baton Rouge, for State Farm Ins. Co.
Ron Macaluso and Paul Peatross, Hammond, for defendant-appellant State Farm Ins. Co.
Gregory G. Gremillion, Gretna, for Aetna Cas. & Sur. Co.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
This appeal arises from an automobile accident which occurred in July, 1983. Following trial on the merits, the jury returned a verdict in favor of plaintiffs, and against defendant, State Farm Mutual Automobile Insurance Company (State Farm), in the amount of $57,664.48. A judgment was signed in accordance with the jury's verdict. Plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV) on the issue of damages, or alternatively, a new trial on damages, or alternatively, an additur. The trial court denied the motion for new trial, granted the motion for JNOV and increased the general damage award from $22,500.00 to $60,000.00. Plaintiffs and defendants appeal.

FACTS AND PROCEDURAL HISTORY
On July 23, 1983, thirteen year old Michael Hoyt was a passenger in the back of a Chevrolet pick-up track owned and operated by a family friend, Glema Kinchen. On the date of the accident, Randy Byrd (Byrd) was travelling in a Ford Thunderbird in a westerly direction on Louisiana Highway 22 toward its intersection with Kraft Road. While waiting to turn, Byrd came to a complete stop to allow several vehicles to pass. Kinchen's pick-up truck also came to a complete stop behind Byrd's vehicle. The accident occurred when Gregory Watts, driving a Chevrolet Camaro, failed to realize the Byrd and Kinchen vehicles were stopped and drove his vehicle into the rear of the Kinchen vehicle, forcing it into the Byrd vehicle. The physical evidence and lack of skid marks at the accident scene indicated that Watts failed to apply his brakes and collided into the stopped Kinchen vehicle at an estimated speed of fifty-five miles per hour. Upon impact, Michael Hoyt came over the top of the bed of the pick-up truck striking the pavement head first.
Michael was taken by ambulance to Seventh Ward General Hospital in Hammond, Louisiana, where he was noted as experiencing projectile vomiting, slow side-to-side eye oscillation, and spontaneous movement of all extremities. He was given injections of Valium and diagnosed as having a closed head injury. Michael was then transported to Charity Hospital in New Orleans, Louisiana, where he remained hospitalized until July 28, 1983. While at Charity Hospital, Michael underwent a CT Scan of the brain, which was found to be normal. Michael was discharged from Charity Hospital with a final diagnosis of cerebral concussion.
Michael returned to the Charity Hospital outpatient center several times following his discharge, and on August 7, 1983 a second CT Scan was performed which revealed "patchy increased density in the left parietal region, is more likely due to artifact, than hemorrhage. Mild hemorrhagic contusion is possible in this area."[1] A follow-up CT Scan was not performed.
According to Michael, his primary complaints following the accident were headaches, memory problems, behavioral problems, and back and neck pain. He was seen by numerous physicians, including Dr. Evan Park Howell, a neurologist; Dr. John R. Pleune, a clinical psychologist; Dr. John D. Jackson, a neurosurgeon, Dr. Alan James Klein, a clinical psychologist; Dr. William Black, a neuropsychologist; Dr. William Bradford Janzen, a clinical psychologist; and Dr. Ralph J. Gessner, an orthopedic surgeon.
On April 5, 1984, Jewel Hoyt, individually and as administrator of the estate of the minor child, Michael Hoyt, filed suit for damages *655 arising from the July 23, 1983 automobile accident.
Named as defendants were: Gregory Watts, the driver of the Chevrolet Camaro; Milton Watts and J. Watts Builders, Inc., as owners of the vehicle being driven by Gregory Watts, and as the employer of Gregory Watts who was alleged to be in the course and scope of his employment at the time of the accident; State Farm Mutual Automobile Insurance Company (State Farm), as the alleged liability insurer of the Watts vehicle; Aetna Casualty and Surety Company (Aetna), as the Hoyt's UM carrier[2], and excess insurer of Milton and Gregory Watts[3]; and United Pacific Insurance Company, as the UM carrier of Glema Kinchen. The case proceeded to trial against Milton and Gregory Watts, State Farm and Aetna (in its capacity as the Watts' excess insurer).[4]
Trial was held on March 13-19, 1991. The trial court granted a directed verdict in favor of plaintiffs on the issue of Gregory Watts' liability, and in favor of defendants on the issue of future medical expenses. The trial court denied defendants' motion for directed verdict on the issue of causation of the alleged injuries, and denied plaintiff's motion for a directed verdict on the issue of Michael's comparative fault. The case was submitted to the jury and a verdict was returned in favor of plaintiffs in the total amount of $57,664.48. On March 26, 1991, judgment was rendered in favor of plaintiffs and against State Farm in this amount, in accordance with the jury's verdict. The judgment further stated that "[t]he parties may submit additional documentation with respect to expert witness fees which they desire to tax as costs."
Plaintiffs responded with a "Motion for a Judgment Notwithstanding the Verdict on Damages, or, Alternatively, a New Trial on Damages, or, Alternatively, an Additur." On May 28, 1991, the trial court granted plaintiffs' motion for JNOV and increased the award for general damages from $22,500.00 to $60,000.00. All other provisions of the judgment on the jury verdict were left intact. Plaintiffs' alternative motion for new trial was conditionally denied by the trial court, and the court did not rule on the request for additur, stating the motion was rendered moot by the JNOV.
On July 22, 1991, plaintiffs filed a rule to show cause for assessment of costs to be taxed against State Farm in the amount of $12,378.31. After a hearing, the trial court fixed costs in the amount of $10,298.43 taxed against State Farm.
Both plaintiffs and defendants appeal both the judgment rendered in accordance with the jury's verdict and the judgment granting JNOV.[5]
*656 On appeal, defendants contend that: (1) the trial court erred in finding sufficient evidence to support a conclusion that plaintiff sustained a back injury as a result of the accident herein; (2) the jury erred in awarding plaintiff general damages which were unreasonably high; (3) or alternatively, the trial court erred in increasing the jury's award for general damages by granting JNOV; (4) the jury erred in awarding damages for loss of earnings or loss of earning capacity without a factual basis in the record for such award; and, (5) the trial court erred in taxing various sums as court costs to be paid by defendants.
Plaintiffs contend on appeal that: (1) the trial court erred in failing to find that the evidence presented at trial warranted an increase in damages to Michael for his closed head injury; (2) the trial court erred in charging the jury concerning aggravation of pre-existing ailments, disorders and conditions; and (3) the jury's awards for general damages, loss of wages and impairment of earning capacity were so unreasonably low as to constitute manifest error.
Thus, the issues presented for review are: (1) whether the trial court improperly instructed the jury; (2) issues related to the quantum of damages awarded as general damages and for loss of earnings and/or earning capacity to which Michael is entitled, and the related issues of causation of his back and neck injuries and alleged mental dysfunction; and (3) the allocation and imposition of court costs.
For purposes of this appeal, plaintiffs' and defendants' assignments of error will be discussed under these general issues. However, before addressing these issues, we feel a review of the jury's answers to interrogatories is warranted for a better understanding of the jury's findings in this case.

JURY INTERROGATORIES
Plaintiffs' position at trial was that as a result of the automobile accident in July of 1983, Michael sustained a closed head injury which resulted in headaches, memory loss, behavioral problems, and mental dysfunction. Plaintiffs also contended that the accident resulted in injuries to Michael's back and neck. Defendants, however, contended at trial that Michael did not sustain a closed head injury, brain injury, impairment or dysfunction as a result of the accident; rather, any mental deficits that Michael was experiencing were the result of a pre-existing learning disability which had been established prior to the accident. Defendants further contended that the back and neck injuries for which plaintiff sought recovery were attributable to a softball injury which occurred after the accident for which defendants can not be held liable.
Interrogatories were submitted to the jury and returned, in pertinent part, as follows:
 JURY INTERROGATORIES
1. Was the fault of defendant, Gregory Watts, a proximate cause of Michael
Hoyt's injuries?
 YES X NO ________
2. WITHOUT REGARD to any fault you may find on the part of Michael Hoyt,
asset out in Questions 4, 5, & 6 below, what amounts, if any, in the following
categories will adequately and fairly compensate Plaintiff:
 (a) The amount, if any, he is due for past and future loss of
 earnings and for decrease in earning ability $30,000.00
 (b) The amount, if any, he is due for pain, suffering, and
 mental anguish from date of injury until today $10,000.00
 (c) The amount, if any, he is due for future pain and suffering
 and mental anguish $ 5,000.00
*657
 (d) The amount, if any, he is due for permanent physical
 and/or mental disability and loss of life's pleasures $ 7,500.00
 (e) The amount, if any, he is due for past medical expenses $ 5,164.48
 (f) The amount, if any, he is due for future vocational rehabilitation
 expenses $ -0-
3. Was Michael Hoyt at fault under the circumstances of this Accident?
 YES_______ NO X 
The jury interrogatories utilized herein were not as detailed as the complex medical testimony in this case warranted. Nonetheless, we have been able to surmise some of the findings reached but not specified by the verdict form based on our review of the jury's award for past medical expenses. The total award made by the jury for past medical expenses totaled $5,164.48. According to our calculations, this amount represents the following expenses submitted by plaintiff: (1) Jefferson Imaging Center, Inc., in the amount of $1,728.00; (2) St. Tammany Parish Hospital in the amount of $102.00; (3) Seventh Ward General Hospital in the amount of $412.45; (4) Charity Hospital in the amount of $1,689.00; (5) Doctors Hospital of Jefferson in the amount of $117.00; (6) Dr. John D. Jackson in the amount of $215.00; (7) Dr. Ralph J. Gessner in the amount of $190.00; (8) Acadian Ambulance in the amount of $161.03; and (9) Clearview Medical Imaging in the amount of $550.00.
After carefully reviewing the jury's award for past medical expenses, we find that the jury's award included hospitalization bills, various diagnostic tests, and the expenses of Doctors Jackson and Gessner, who primarily treated and evaluated Michael's back and neck injuries.
The remaining medical expenses sought by plaintiffs were expenses incurred with various psychologists and a neuropsychologist for treatment and/or evaluation of Michael's alleged closed head injury and mental dysfunction resulting therefrom. We conclude, as did the court below, that the jury rejected plaintiff's claim that the automobile accident resulted in brain damage or mental incapacity, and accepted defendants' claim that any mental incapacity experienced by plaintiff resulted from his learning disability. However, it is also apparent from the amounts awarded that the jury accepted plaintiff's theory that the accident caused Michael's back injuries and rejected defendant's contention that the back injuries were caused by an intervening incident, namely a Softball accident.

JURY INSTRUCTION CONCERNING PRE-EXISTING CONDITION

(Plaintiffs' Assignment of Error No. 2)
Plaintiffs argue on appeal that the trial court erred when it charged the jury concerning aggravation of pre-existing ailments, disorders, and conditions. They contend that the evidence did not support such a charge because "[Michael's] learning disability cannot medically or psychologically be considered a pre-existing condition that could be aggravated by a closed head injury."
Plaintiffs complain that the following passage in the instructions was improper:
If it is shown that a claimant is suffering from ailments, disorders or conditions before an accident, and if it is shown that the accident aggravated these previous ailments, disorders or conditions, and caused suffering and/or disability as opposed to the infliction of a new injury, you must determine the extent to which the accident caused such suffering and/or disability and the extent to which such suffering and/or disability were related to and caused by the previous disorders or conditions. For [sic] in assessing damages, you may only consider that extent of suffering or disability directly caused by the accident, and the Defendant is not responsible for suffering or disability caused by ailments, disorders *658 or conditions which existed before the accident.
At trial, plaintiffs objected to this charge arguing that it "confuse[s] apples with oranges because the plaintiff's contention is that there is no underlying condition which was aggravated by the trauma sustained in this case."
Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those issues. Hobgood v. Parish of East Baton Rouge, 563 So.2d 413 (La.App. 1st Cir.), writ denied, 567 So.2d 105 (La.1990).
Clearly, an issue in this trial was the extent to which defendants may be liable for damages in relation to Michael's alleged closed head injury. Defendants' position was that Michael did not sustain a brain injury, impairment, or dysfunction as a result of the automobile accident; instead, any disability or diminished mental status was attributable to his pre-existing learning disabilities. Plaintiffs, however, contended that Michael's learning disability was in no way aggravated by the trauma he sustained. Instead, they argued Michael's closed head injury resulted in cognitive dysfunction, a problem separate from his earlier learning disability.
Considering the disputed issue of the extent of disability attributable to the alleged closed head injury, the instruction given by the trial court fairly pointed out to the jury that defendants were responsible for only that suffering and disability caused by the accident, and not for injuries or disabilities which could not be attributed to the wrongful act. See Sanders v. Collins, 551 So.2d 644, 651 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1261 (La.1990).
Upon review of the jury instructions given by the trial court, and considering the pleadings and evidence in this case, we find that the instructions as given fairly and reasonably pointed out the issues presented and provided correct principles of law to be applied by the jury. The duty of the trial court in framing its charge is to explain the law applicable to the case as a whole and applicable to all contingent fact conclusions before the jury. Moreover, it is for the jury in the fact finding process to assess the applicability of a charge to the merits of the case. Reeder v. Allstate Insurance Company, 235 So.2d 111, 113 (La.App. 4th Cir.), writ refused, 256 La. 615, 237 So.2d 397 (1970).
Thus, plaintiffs' second assignment of error is without merit.

DAMAGE AWARDS

(Plaintiffs' Assignments of Error Nos. 1 & 3; Defendants' Assignments of Error Nos. 1, 2, 3, & 4)

HEAD INJURY

Causation
At trial and in their brief to this court, plaintiffs argue that Michael sustained a closed head injury which resulted in mental dysfunction and deficits. Defendants' position at trial and on appeal is that Michael's mental dysfunction is not attributable to the accident, but instead due to a learning disability. As previously stated, we have concluded that the jury rejected plaintiffs' theory that the injury Michael sustained in the automobile accident caused his mental deficiencies. Thus, the issue before this court on appeal is whether the jury was manifestly erroneous in rejecting plaintiffs' theory that Michael's head injury resulted in mental dysfunction.
In refusing to grant JNOV on this portion of plaintiff's claim, the trial court stated, in written reasons:
Plaintiff presented considerable evidence as to the head injury, both medical and psychological. This evidence was rebutted by medical and psychological evidence from defendants, including claims that plaintiff had been a slow learner and had a low intelligence quotient based on extensive testing in the school system prior to the accident. Although plaintiff's evidence, candidly, seemed more appealing to this Court, the Court finds that there was reasonable countervailing evidence upon which the jury may have may [sic] concluded that plaintiff's mental condition was not exacerbated by the accident. This Court *659 may not substitute its own creditability [sic] or factual findings for those of the jury, absent clear error....
Accordingly, this Court will not grant judgment notwithstanding the verdict as to damage claims relating to the head injury.
At trial, the jury received substantial and conflicting expert testimony and medical evidence relative to the alleged closed head injury and resulting mental dysfunction and deficits, as well as evidence of Michael's prior learning disabilities. After having received this evidence, the jury rejected plaintiffs' theory that the mental dysfunction experienced by plaintiff was attributable to the automobile accident, instead concluding that the mental deficits experienced by Michael were the result of an unrelated and pre-existing learning disability.
It is well settled that a court of appeal may not set aside a finding of fact by a jury in the absence of manifest error, and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Lirette v. State Farm Insurance Company, 563 So.2d 850, 852 (La.1990). The determination of an expert's credibility is a factual question subject to the manifest error/clearly wrong standard of review. Martin v. East Jefferson General Hospital, 582 So.2d 1272, 1277 (La. 1991). After weighing and evaluating all of the evidence, a jury is free to accept or reject the opinions expressed by experts. Armstrong v. Fireman's Fund Insurance Company, 558 So.2d 646, 650 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990).
As a reviewing court, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one in view of the record in its entirety. Stobart v. State of Louisiana, through the DOTD, 617 So.2d 880, 882 (La.1993). While this court, like the trial court, might have reached a different conclusion in evaluating the testimony herein, we cannot say that the jury was manifestly erroneous in concluding that the extensive mental dysfunction experienced by plaintiff was attributable to his prior learning disabilities and not to the accident.
Dr. Evan Park Howell, a neurologist, testified by deposition that he evaluated Michael on February 9, 1984, at which time Michael complained of headaches, irritability, memory loss, and problems with school. Based on his examination of Michael, Dr. Howell concluded although Michael had no structural abnormality, he did suffer a significant head injury and may have genuine difficulty with memory. However, Dr. Howell stated that if Michael had memory problems prior to the accident which were equivalent to the memory problems following the accident, he would conclude that the problems were not due to the injury, but were attributable to the pre-existing condition.
Dr. William Black, an expert in the field of neuropsychology, testified at trial. Dr. Black testified that Michael had impairment of memory functioning which was not due to intellectual inability, and that Michael's memory functioning was significantly lower than the level one would predict based on his intelligence. According to Dr. Black, these problems were attributable to the automobile accident.
However, Dr. William Janzen, an expert psychologist who testified on behalf of defendants, stated that Michael's memory functioning was consistent with his intellectual functioning. While Dr. Janzen admitted that Michael's memory functioning was below average, he observed that no tests were obtained prior to the accident relative to Michael's memory functioning which could be used to compare his memory functioning post-accident.
Dr. Black also acknowledged that the testing done on Michael by the school system prior to the accident did not provide a valid measure of Michael's prior memory functioning, and that the tests utilized by the school board have no ability to assess any aspect of memory functioning. Thus, he opined, one could not accurately compare the data in the school records (which have passing references to memory problems) with the neurological testing administered to Michael following the accident.
*660 Based on this evidence and our review of the record in its entirety, we cannot conclude that the jury was clearly wrong in rejecting plaintiffs' claim that Michael's mental problems were attributable to the automobile accident. While some of the experts testified that Michael has memory deficits which they attribute to the accident, there is convincing evidence in the record that Michael exhibited at least some memory problems prior to the accident occasioned by and in connection with his pre-existing learning disability. Our review of the voluminous testimony herein convinces us that the jury could have reasonably concluded that plaintiffs failed to prove that the mental dysfunction was attributable to the automobile accident instead of his learning disability. Thus, the jury was not clearly wrong in its evaluation of the evidence or its conclusion that the brain injuries and cognitive deficits complained of were not causally related to the accident.
Thus, we find no merit in plaintiffs' first assignment of error.

Quantum
On appeal, plaintiff contends the trial court erred, when ruling on the motion for JNOV, in failing to make an award for Michael's closed head injury.[6]
As stated above, it is apparent that the jury concluded that Michael was not suffering permanent brain damage or mental dysfunction as a result of the accident. Nonetheless, the jury's award for medical expenses included expenses incurred at Seventh Ward General Hospital and Charity Hospital and for certain diagnostic tests related to the post-concussion syndrome Michael experienced as a result of the accident.
While the trial court adjusted the general damage award to compensate Michael for the pain and suffering and mental anguish he has experienced and will experience for his back and neck injuries, the jury's verdict and the judgment of the trial court fail to award general damages for the head trauma, and post-concussion syndrome, which Michael experienced as a result of the accident and which the jury included in the special damages award.
Where there is a finding that plaintiff was injured and incurred medical expenses, the failure to award general damages is legal error which requires this court to assess, res nova, the amount of damages appropriate under the circumstances. Marcel v. Allstate Insurance Company, 536 So.2d 632, 635 (La.App. 1st Cir.1988), writ denied, 539 So.2d 631 (La.1989).
The record shows that upon impact, Michael was thrown from the bed of the pick-up truck and struck his head either on the pavement or on the windshield of an oncoming vehicle. Randy Byrd, a witness at the scene of the accident, stated that Michael appeared to be unconscious, was covered with glass and blood, and was crying. Gary Ratcliff also witnessed the accident and testified that after the accident, Michael was bleeding, crying and upset, had glassy eyes and appeared to be in shock.
Michael's mother and father testified that Michael was unable to recognize them when they first saw Michael after the accident. Michael's mother, Lois Hoyt, testified that when she saw Michael at Charity Hospital he was physically restrained, but "waiving [sic] his arms and legs around trying to get a [sic] loose." Michael remained at Charity Hospital for five days.
The hospital records from Seventh Ward General Hospital were introduced at trial and indicate that upon arrival, Michael was awake but non-responsive to questions or commands, and was exhibiting slow side-to-side eye oscillation, and spontaneous movement of all extremities. The Acadian Ambulance EMS Run Report indicates that Michael was combative and experiencing projectile vomiting.
It is clear that Michael suffered pain as a result of this head injury. While the jury found that Michael's mental dysfunction was not recoverable because not attributable to *661 the accident, Michael is certainly entitled to recover for the pain, suffering, and mental anguish he experienced following the accident as a result of his post-concussion syndrome and head trauma.
Under these circumstances and considering the nature, extent, and duration of his injuries, we conclude that an additional award of $15,000.00 is warranted to justly and adequately compensate Michael for this portion of his claim.

BACK AND NECK INJURIES

Causation
Defendants contend that the evidence was insufficient to support a finding that the back and neck injuries complained of by plaintiff were attributable to the automobile accident and that the jury therefore erred in awarding general damages which were unreasonably high. Defendants argue that the back injury sustained by plaintiff is attributable to a softball accident which occurred approximately two years after the automobile accident. The jury rejected this contention and found that Michael's back and neck injuries were caused by the automobile accident.
In support of their argument, defendants note that Michael never related any back or neck pain to any doctor prior to the time he saw a chiropractor, Dr. James Arbogast, on April 10, 1985, at which time he filled out a patient information form and stated that the condition started when he was playing softball and slid into base.
Michael testified that his back and neck pain began shortly following the accident. Michael's mother also testified that Michael complained of back and neck pain shortly following his discharge from Charity Hospital. Mrs. Hoyt explained that prior to the time Michael was seen by Dr. Ralph Gessner, a specialist in orthopedics, the back and neck pain was tolerable, and they were more concerned with obtaining treatment for Michael for his headaches and mental dysfunction.
Dr. Gessner was qualified as an expert in orthopedic surgery and testified at trial that he first saw Michael on April 20, 1987, at which time Michael related being in the automobile accident and attributed the pain in his back and neck to the accident. Dr. Gessner explained that Michael had injuries in all three zones of the spine: cervical, thoracic, and lumbar. An MRI of the back was obtained on November 20, 1989, and revealed a slight irregularity in the disc at L4-5, that could perhaps be a herniated disc, although the condition was not confirmed. Dr. Gessner explained that in a person Michael's age, one would not expect degeneration of the disc.
In the cervical area, Dr. Gessner found a small herniation at C6-7, which he concluded could possibly cause problems in the future because it could result in arthritis or a full blown herniation. In the thoracic spine, Dr. Gessner explained that the MRI showed lateral movement at T8-9, or a compression of the vertebral body. Dr. Gessner testified that Michael's being thrown from the pick-up truck and striking his head could have resulted in a mechanism injury, which is axially loading down on the spine or literally putting force down the axis of the spine. This type of injury, according to Dr. Gessner, resulted in the compression of the vertebral bodies. Dr. Gessner concluded that Michael had a serious orthopedic injury which would not be expected to result from a slide into base while playing ball. Thus, he attributed the severity of Michael's injury to the automobile accident and predicted that playing ball, weight lifting or other physical labor would merely aggravate the condition.
Dr. John Jackson, a neurosurgeon, examined Michael and testified at trial that he reviewed x-rays of Michael's thoracic spine which revealed disc disease at T8-9. Dr. Jackson attributed Michael's pain to degeneration of the disc at T8-9. Dr. Jackson also testified that when he took Michael's history, he was told that he experienced back pain two weeks after the accident.
As stated above, a tortfeasor is liable only for the direct and proximate results of his wrongful acts, and cannot be held liable for injuries which are not attributable to the wrongful act. Sanders, 551 So.2d at 651. Whether an accident caused a person's injuries is a question of fact which should not *662 be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973, 979 (La. 1991). After reviewing the record in its entirely, we find no error in the conclusion by the jury and the lower court that Michael's back and neck injuries were caused by the automobile accident. This finding is amply supported by the record and is not clearly wrong.

Quantum
Defendants further argue that the trial court erred in granting plaintiffs' motion for JNOV and increasing the general damage award for Michael's neck and back injuries from $22,500.00 to $60,000.00. Plaintiffs, on the other hand, contend that the $60,000.00 amount awarded by the trial court was justified to compensate Michael for his back and neck injuries.
LSA-C.C.P. art. 1811 controls the use of JNOV, but does not specify the grounds on which a trial judge may grant a JNOV. In Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991), the Louisiana Supreme Court discussed the use of JNOV and stated as follows:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.... In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Anderson, 583 So.2d at 832.
After reviewing the record, we find the trial court properly granted plaintiffs' motion for JNOV to increase the award for this portion of plaintiff's claim. Reasonable and impartial jurors in the exercise of impartial judgment in this case could not differ as to the fact that the jury's award of $22,500.00 in general damages was inadequate, in light of the severity and extent of Michael's back and neck injuries involving injury to all three regions of the back. Therefore, the trial judge was correct in granting JNOV for this item of damages and in the amount by which he increased the jury's award.
Accordingly, plaintiffs' and defendants' argument on this issue is without merit.

LOSS OF EARNINGS AND LOSS OF EARNING CAPACITY
Plaintiffs argue that the award of $30,000.00 made by the jury representing loss of earning capacity is unreasonably low and should be increased. Defendants, on the other hand, argue that the award is not supported by the record.
Before a court of appeal can disturb a quantum award made by the lower court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
At the time of the accident in the summer of 1983, Michael was a thirteen year old student about to begin the eighth grade at Springfield Elementary School. After the accident, Michael successfully completed the eighth grade and proceeded to ninth. After *663 attempting ninth grade four times, Michael quit school and went to work at Mississippi Auto Auction where he continued to work through the date of trial, earning $4.00 per hour. Michael was hired by Mississippi Auto Auction because his aunt worked there and "got [him] the job."
Irrespective of any loss of earning capacity due to Michael's pre-existing learning disability, the evidence presented at trial shows that Michael has a physical disability caused by the accident. Dr. Gessner testified that Michael has injuries to all three regions of the spine. While Dr. Gessner predicted that the compression fracture would heal on its own, he also diagnosed disc disease and degeneration of the disc at T8-9; a suspected herniated disc at L4-5; and a small herniation at C6-7, which could result in full blown herniation in the future. Dr. Gessner opined that these back injuries will require that Michael refrain from physical labor.
This disability makes Michael disadvantaged in the job market. Carla Seyler, plaintiff's expert in the field of vocational rehabilitation, testified that Michael's choices in the labor market will be severely limited due to the back and neck injuries, simply because employers are reluctant to hire persons who have back injuries.
Because plaintiff was unemployed at the time of the accident sued upon, his economic claim is one for loss or impairment of earning capacity. Loss or impairment of earning capacity is determined by subtracting plaintiff's earning ability after the injury from earning ability immediately prior to the injury. The focus is not on actual earnings per se. Allen v. Great Atlantic & Pacific Tea Company, Inc., 589 So.2d 43, 47 (La. App. 1st Cir.1991).
Impairment of earning capacity cannot be calculated with mathematical certainty, and sound judicial discretion must be exercised after all proper considerations are weighed. Philippe v. Browning Arms Company, 395 So.2d 310, 317 (La.1980), on rehearing.
Philip Jeffress, plaintiff's expert economist, testified that the lowest figure for the economic loss sustained by plaintiff is approximately $87,000.00, based upon Seyler's vocational assessment of Michael's employment potential following the accident. However, in awarding only $30,000.00 for loss of earning capacity, the jury apparently did not attribute Michael's inability to work in the future solely to the back and neck injuries, and undoubtedly concluded Michael's inability to secure work was also affected by the learning disability not attributable to the accident. While Michael's mental disability would likely have resulted in his being able to only perform unskilled labor, it is clear from the evidence that the accident and resulting physical disabilities have also curtailed his ability to perform most unskilled labor.
Considering the testimony and evidence on this issue, we cannot conclude that the jury abused its discretion in making an award of $30,000.00 for loss of earning capacity; nor do we conclude that the record does not support the amount awarded.
Therefore, we affirm the jury's award of $30,000.00 for loss of earning capacity and likewise find no merit in the arguments of plaintiffs and defendants on this issue.

TAXATION OF COURT COSTS

(Defendants' Assignment of Error No. 5)
Finally, defendants assert that the trial court erred in fixing various items as court costs and awarding judgment for those costs in favor of plaintiffs and against defendants. We conclude that this issue is not properly before this court, as the judgment which fixed costs and taxed them against defendants is a final judgment which was not appealed.
On March 26, 1991, after trial on the merits, the trial court rendered judgment in accordance with the jury verdict. This judgment provided that State Farm pay all costs of the proceedings, but also stated that "[t]he parties may submit additional documentation with respect to expert witness fees which they desire to tax as costs." Plaintiffs then filed a motion for JNOV. In response to plaintiffs' motion, a second judgment was rendered on May 28, 1991, wherein the plaintiffs' general damage award was increased by the trial court.
*664 On June 27, 1991, defendants, Gregory Watts and State Farm, filed a motion for suspensive appeal from the May 28, 1991 judgment, which was granted by the trial court by order dated September 3, 1991. Plaintiffs' motion for a cross appeal from the May 28, 1991 judgment was granted by order dated July 8, 1991.
On July 22, 1991, plaintiffs filed a "Rule to Show Cause/Taxation of Costs" which was set for hearing on August 12, 1991. Following the hearing, on August 21, 1991, the trial court rendered judgment fixing costs in the amount of $10,298.43, and taxing those costs against State Farm.
A "costs" judgment against a defendant is a separately appealable judgment where the amount of expert witness fees taxed as costs are substantial and where, following a judgment on the merits, the trial court takes the matter of costs under advisement and conducts additional hearings on such matter. See Louisiana Resources Company v. Fiske, 343 So.2d 1219 (La.App. 3rd Cir.1977).
Defendants have not appealed the August 21, 1991 judgment wherein costs were fixed in the amount of $10,298.43 and taxed against State Farm. Accordingly, we find that the judgment rendered by the trial court on August 21, 1991 determining costs and assessing those costs against State Farm is a final judgment.

CONCLUSION
For the above and foregoing reasons, the judgment of the trial court is hereby amended to include an additional award in favor of plaintiff, Michael Hoyt, in the amount of $15,000.00, together with legal interest from date of judicial demand, until paid, as additional general damages for the post-concussion syndrome and head trauma sustained in the accident. In all other respects, the original judgment and the judgment granting JNOV in favor of plaintiffs are affirmed.
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Michael Hoyt and against defendants, Milton and Gregory Watts, and their insurer, State Farm, in solido, in the principal amount of $100,000.00, plus legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Michael Hoyt, and against defendants, Milton and Gregory Watts, and Aetna, in its capacity as UM carrier on the Hoyt vehicle, in solido, in the principal amount of $5,000.00, plus legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Michael Hoyt, and against defendants, Milton and Gregory Watts in the principal amount of $5,164.48, plus legal interest from date of judicial demand, until paid.
AMENDED, AND AS AMENDED, AFFIRMED.

ON APPLICATION FOR REHEARING
Rehearing granted in part, denied in part.
The application for rehearing filed on behalf of Gregory Watts and State Farm Mutual Automobile Insurance Company is granted in part and denied in part. It is granted insofar as our opinion cast Milton J. Watts in judgment. We therefore amend our decree to delete Milton J. Watts from the decree.
In all other respects, the application for rehearing is denied.
NOTES
[1] An artifact is an abnormality on a diagnostic procedure, not correlated clinically with any finding in the patient.
[2] The parties stipulated that Aetna issued a UM policy to Jewel Hoyt and that the UM policy was in full force and effect on the date of the accident. The limits of coverage provided by the policy was $5,000.00 per person and $10,000.00 per accident. In an effort to avoid litigation costs and attorney's fees at trial which might reasonably exceed Aetna's policy limits, the parties further agreed that Aetna, in its capacity as Jewel Hoyt's UM carrier, would not actively participate or attend conferences, hearings or trial, and that Aetna would pay its $5,000.00 limits in the event Jewel Hoyt's UM policy became applicable, whether by judgment or compromise.
[3] In the trial court, Milton and Gregory Watts filed a petition for declaratory judgment against Aetna seeking a declaration that Aetna provided excess coverage over the $100,000.00 limits of the State Farm policy. In the trial court, the Watts suit was consolidated with the suit filed by the Hoyts. Aetna contended that their exposure began at $250,000.00, thus resulting in a gap in coverage. The trial court rendered judgment in favor of Milton and Gregory Watts, finding that the policy language was ambiguous, and construed the policy in favor of coverage. This court, in Watts v. Aetna Casualty and Surety Company, 574 So.2d 364 (La.App. 1st Cir.1990) held that the policy was unambiguous and that accordingly, there was a "gap" in coverage. The Watts then sought a writ to the Louisiana Supreme Court, which was denied. See Watts v. Aetna Casualty and Surety Company, 568 So.2d 1089 (La.1990). Thus, this court's finding that a gap in coverage exists is now final.
[4] The other parties were dismissed from the proceedings and are not involved in this appeal.
[5] We note that while the judgments at issue on appeal were rendered against State Farm only, all post-judgment pleadings and motions, including the motion for appeal and brief in support thereof were filed on behalf of State Farm and Gregory Watts. We also note that at some point in these proceedings, Michael reached majority. While one pleading refers to him as "the substituted plaintiff in these proceedings," there is no order in the record substituting Michael as plaintiff. The judgments were rendered in favor of plaintiff. and the motion for appeal and brief were also filed on behalf of both Jewel and Michael Hoyt.
[6] In granting JNOV, the trial court stated:

[M]aking an independent determination of the nature and extent of plaintiff's back injuries, this Court finds that $60,000.00 is a reasonable award for the general damages sustained by plaintiff, and will grant judgment notwithstanding the verdict as to this amount of general damages. (emphasis added)