644 So.2d 813 (1994)
Carol Renee' Coates SCHEIDT, Individually and as Representative of the Succession of Charles H. Scheidt, and as Tutrix of the Minor Children, Regina Nicole Scheidt, and Tara Charene Scheidt
v.
James B. DENNEY, M.D., and National Medical Enterprises, Inc., d/b/a Northshore Psychiatric Hospital.
No. 93 CA 2014.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
Writ Denied January 6, 1995.
*814 Michael L. Mullin, New Orleans, for plaintiff-appellant.
Lawrence L. McNamara, and William S. Penick, New Orleans, for defendants-appellees.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
In this medical malpractice suit it is alleged that Dr. James B. Denney and Northshore Psychiatric Hospital breached standards of care and that said breaches were a cause in the suicide of plaintiff's husband, Charles Scheidt.

FACTS
On July 16, 1987, Mr. Scheidt appeared at Northshore Psychiatric Hospital (Northshore) relating symptoms of depression. He was admitted and placed under the care of Dr. Denney. The immediate goal of treatment was for Mr. Scheidt to function without *815 suicidal thoughts. Following psychological tests, a dexamethasone suppression test[1], a medical exam, and a social history, Dr. Denney prescribed an antidepressant and diagnosed Mr. Scheidt with atypical depression and narcissistic personality disorder. Mr. Scheidt's condition improved, and he was discharged on July 29, 1987.
Mr. Scheidt's condition apparently deteriorated, and he was readmitted on August 1, 1987. He remained at Northshore until his second discharge on September 11, 1987. Upon discharge, Mr. Scheidt would continue participation in several Northshore programs, take anti-depressants and see Dr. Denney on an outpatient basis. Mr. Scheidt canceled his first outpatient session with Dr. Denney which was scheduled for September 17, 1987. On September 18, 1987, Mr. Scheidt committed suicide.
Mrs. Scheidt filed this suit alleging that Dr. Denney breached the appropriate standard of care by improper diagnosis, treatment and post-discharge care and by failing to give appropriate warnings and precautions reasonably calculated to prevent Mr. Scheidt's access to firearms. She further alleged that Northshore breached the appropriate standard of care by failing to adequately care for and report Mr. Scheidt's activities while he was a patient and in failing to adopt and/or maintain policies reasonably calculated to prevent access to firearms by suicidal patients.
Following trial, the jury returned a verdict in favor of defendants, finding that although each health care provider had breached the controlling standards of care, such breaches were not a cause of Mr. Scheidt's death. The trial court then denied Mrs. Scheidt's motions for new trial and judgment notwithstanding the verdict. However, the court granted Mrs. Scheidt's motion to amend the judgment, wherein defendants were taxed with their own expert witness fees and all costs of the district court proceedings.
Mrs. Scheidt appealed, asserting that the court erred in failing to read her proposed jury instructions on proximate cause and in denying her new trial and JNOV motions. In answering the appeal, defendants assert that the jury erred in determining that they breached the applicable standards of care and that the court erred in assessing them with costs.

JURY CHARGE
On appeal, Mrs. Scheidt asserts that the trial judge committed error by failing to read her proposed jury instructions on the issue of causation. At the close of evidence, the judge read the following jury charge:
The law requires that the defendant's allegedly wrongful conduct be a cause in fact of the plaintiff's harm. As jurors, you should first determine what, if any, conduct of the defendants falls below the standard which I have just read to you, or the standards which I have just read to you. If you do find such wrongful conduct, you must next ask whether the defendant's conduct was a substantial factor in causing Mr. Scheidt's suicide. Some direct relationship is required between the negligent conduct complained of and the resulting injury.
Appellate courts must exercise great restraint when considering the adequacy of a district court's jury instructions. Creel v. S.A. Tarver & Son Tractor Co., Inc., 537 So.2d 752, 754 (La.App. 1st Cir.1988). "The precise instructions submitted by the litigants do not have to be given if those given correctly reflect the issues and the law applicable to those issues." Hobgood v. Parish of East Baton Rouge, 563 So.2d 413, 416 (La. App. 1st Cir.), writ denied, 567 So.2d 105 (La.1990). When reviewing the adequacy of jury instructions, the proper inquiry is whether the instruction at issue misled the jury to such an extent that it was prevented from doing justice. Creel, 537 So.2d at 754. After reviewing the instructions, we conclude that the charge given was not misleading and that it comports with principles of causation established by the Louisiana Supreme Court.
*816 Mrs. Scheidt contends that a proper charge on the law of causation in death cases must include the "chance of survival" doctrine articulated in Hastings v. Baton Rouge General Hospital, 498 So.2d 713 (La.1986). In Hastings, the supreme court addressed a plaintiff's burden of proof on the issue of causation in the context of a wrongful death medical malpractice case. In articulating the plaintiff's burden, the court explained that:
Once a breach of duty constituting malpractice is established, the question of whether the malpractice contributed to the death, i.e., lessened the chance of survival, is a question of fact for the jury. A substantial factor need not be the only causative factor; it need only increase the risk of harm....
. . . .
It is not necessary to prove that a patient would have survived if proper treatment had been given, but only that there would have been a chance of survival....
. . . .
Defendant's conduct must increase the risk of a patient's harm to the extent of being a substantial factor in causing the result but need not be the only cause.
Id. at 720 (citation omitted); See also Tabor v. Doctors Memorial Hospital, 563 So.2d 233, 238 (La.1990).
The "chance of survival" doctrine is intended to relieve wrongful death plaintiffs of the nearly impossible burden of proving that a decedent would have survived but for the negligent conduct of the defendants. Under the doctrine, a wrongful death plaintiff need only prove that the defendant's conduct was a substantial factor in bringing about the death.
In the present case, the trial judge's instruction adequately addressed the primary concern voiced by the supreme court in Hastings: that a wrongful death plaintiff not be saddled with the unreasonable burden of proving that the decedent would have survived but for the malpractice. The jury was properly instructed that plaintiff need only prove that the defendants' conduct was a substantial factor in bringing about Mr. Scheidt's death. Therefore, the trial judge did not err in failing to read Mrs. Scheidt's Hastings jury charge.
Mrs. Scheidt also contends that the trial judge erred by failing to instruct the jury that Mr. Scheidt's suicide, although foreseeable, could not be used by defendants as a defense in this medical malpractice claim. The proposed jury charge on this issue read as follows:
Although suicide may be a purely voluntary act, a psychiatrist is not necessarily relieved of liability for professional negligence when his patient takes his own life. In certain situations, suicide is a wholly foreseeable consequence of the psychiatrists (sic) malpractice. The prevention of suicide may have been the very reason the patient sought out psychiatric help in the first place.
Therefore, in certain instances, where suicide is foreseeable, the psychiatrist is not relieved of liability because his patient intentionally or negligently took his own life. Argus v. Scheppegrell, 472 So.2d 573 (La.1985).
Argus does not require the instruction requested by Mrs. Scheidt. In Argus, a pre-comparative fault case, the court held that when a healthcare provider's malpractice results in a patient's suicide, the healthcare provider is not entitled to raise the patient's contributory negligence as an absolute bar to recovery. Argus, 472 So.2d at 577. In a footnote, the court limited its holding to pre-comparative fault cases. Id. at 574. Thus, in light of the current comparative fault scheme the trial judge properly refused to include the proposed charge in his instructions.
After examining the jury instructions, we conclude that the charges given by the trial judge adequately reflect the applicable law on the issue of causation.

DENIAL OF NEW TRIAL AND JNOV
Mrs. Scheidt's next assignment of error concerns the trial court's denial of her new trial and JNOV motions.
Mrs. Scheidt asserts that the court should have granted a new trial on grounds that the jury was not properly instructed, the jury *817 was confused on the issue of causation and the verdict was contrary to the law and evidence. La.Code Civ.P. arts. 1972(1) and 1973. Because we have determined that the jury was properly instructed, we cannot say that the court erred in denying the motion on those grounds. Furthermore, after reviewing the record, we cannot say that the jury was confused or that the verdict was contrary to the law and evidence. Accordingly, the trial court's denial of a new trial was appropriate.
Mrs. Scheidt also suggests that reasonable minds could not differ on the issue of causation, and therefore, the trial court should have granted her JNOV motion. La.Code Civ.P. art. 1811. However, the evidence does not point so strongly and overwhelmingly in favor of either party on the issue of causation. Therefore, the trial court's denial of the JNOV was also appropriate.

JURY CONCLUSIONS
We now consider the jury's factual findings. Following trial, the jury concluded that Dr. Denney and Northshore breached the standards of care but that said breaches were not a substantial cause of Mr. Scheidt's suicide. While Mrs. Scheidt asserts that the findings on causation are incorrect, Dr. Denney and Northshore assert that they did not breach the standards of care.
In the absence of manifest error, an appellate court may not set aside a jury's findings of fact. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Additionally, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even where the appellate court may feel that its own evaluations and inferences are more reasonable. Id.
We have carefully reviewed the record and although we are convinced that we would have weighed the evidence differently, under Rosell, we must affirm the jury's verdict. Considering the record in its entirety, the jury's conclusion that Dr. Denney and Northshore breached the appropriate standards of care is not totally unreasonable. While the record does not support a finding of improper diagnosis or treatment, it could support a finding of improper post-discharge care and/or failure to give appropriate firearms warnings and precautions. Additionally, we find no manifest error in the jury's factual determination that these breaches were not a substantial factor in Mr. Scheidt's suicide. Therefore, we affirm both portions of the jury's verdict.

COSTS
Finally, in answer to this appeal defendants assert that the trial court erred in granting Mrs. Scheidt's motion to amend the judgment which cast defendants for costs.
Assessment of costs is provided for in La. Code Civ.P. art. 1920:
Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.
Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.
A trial court's assessment of costs will not be disturbed unless there is an abuse of discretion. Morrison v. Gonzalez, 602 So.2d 1104, 1107 (La.App. 1st Cir.1992). The wholly prevailing party is not taxed with the costs of litigation unless that party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against it. Pinion v. Louisiana Farm Bureau, 590 So.2d 1230 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1301 (La.1992).
In this case, there is no showing that defendants caused costs to be incurred pointlessly or engaged in other conduct justifying the assessment of costs against them. However, the defendants did not wholly prevail because the jury found the defendants breached their standards of care. We find the trial court abused its discretion in assessing all costs against the defendants. Because both sides prevailed to some extent, we find it more equitable to assess one half of the costs to plaintiff and one half to defendants. See State ex rel. Guste v. Nicholls College Foundation, 592 So.2d 419 (La.App. 1st Cir.1991), writ denied, 593 So.2d 651 (La.1992).

*818 CONCLUSION
For the foregoing reasons, the jury's verdict is affirmed. The judgment is amended to assess one half of the costs against the plaintiff and one half of the costs against the defendants.
AMENDED, AND AFFIRMED AS AMENDED.
NOTES
[1] Although a positive DST result indicates bipolar illness, a negative result does not rule out the disorder. Mr. Scheidt's results were negative.