359 So.2d 690 (1978)
Bobby BOLIN
v.
NATIONAL TEA COMPANY.
No. 11958.
Court of Appeal of Louisiana, First Circuit.
May 1, 1978.
Rehearings Denied June 12, 1978.
John deGravelles, Baton Rouge, of counsel, for plaintiff-appellee Bobby Bolin.
William M. Barnett, New Orleans, of counsel, for defendant-appellant Nat. Tea Co.
Before LANDRY, SARTAIN and ELLIS, JJ.
*691 ELLIS, Judge.
This suit arises out of a slip and fall accident which occurred in the parking lot outside of a National Supermarket in Baton Rouge. Plaintiffs are Mrs. Ethel Fannette Godwin Bolin and her husband, Bobby J. Bolin. Defendant is National Tea Company, owner of the store. After trial on the merits before a jury, a verdict was returned in favor of Mrs. Bolin for $10,000.00 and Mr. Bolin for his special damages. Judgment was signed accordingly, and defendant has appealed. Plaintiffs have answered the appeal, asking for an increase in the award.
The accident happened on January 19, 1975, at the National Supermarket on Plank Road. In front of the main entrance to the store is a wide sidewalk, which is covered by the roof of the building. On the sidewalk, about one foot from the curb, and parallel thereto, abutting the parking lot, is a wall which acts as a windbreak. At either end of the wall, the top of which is constructed of glass, and the bottom of some opaque material, are two cart ramps, about four feet in width, which lead from the sidewalk to the surface of the parking lot.
When Mrs. Bolin and her husband arrived at the store, they parked their car immediately in front of the wall, walked to their right around the end of the wall, and thence into the store. Mrs. Bolin left the store before her husband, and started back to the car, following the same route around the end of the wall. Instead of descending the ramp, she stepped off the curb at the end of the wall, where the ramp and curb join to form a corner. As she did so, her foot struck a 16-ounce Coca Cola bottle which was lying on its side in that corner. The bottle rolled out from under her foot, and she fell, causing the injuries complained of.
Plaintiffs contend that this case should be governed by the same rules which apply to slip and fall cases which take place inside a self-service grocery store. In such cases, the storekeeper, although not the insurer of the safety of his patrons, is required to exercise reasonable care to keep the aisles in his store in a safe condition, and must make a reasonable effort to keep the floor free of objects or substances which might cause someone to slip and fall. Once a customer has shown that there was a foreign substance on the floor which caused him to slip and fall and that he was injured as a result, a presumption that the storekeeper was negligent arises. The storekeeper then has the burden of exculpating himself from the presumption, which he can do by proving that he was reasonably prudent in his efforts to keep the floors in a reasonably safe condition and free from foreign objects and substances. Kavlich v. Kramer, 315 So.2d 282 (La.1975).
Defendant argues that the heavy burden placed on the storekeeper in the Kavlich case is not applicable to cases which take place away from the display areas of the store, such as in the parking lot.
We think that a storekeeper has the same duty to keep such areas in a reasonably safe condition, and he may not permit hazardous conditions of which he has actual or constructive notice, to exist. Miller v. Broadmoor Village, Inc., 321 So.2d 925 (La. App. 1st Cir. 1975); Lecompte v. State, Dept. of Pub. Saf., 343 So.2d 449 (La.App. 3rd Cir. 1977). On the other hand, the patron in such areas is charged with using reasonable care for his own safety, and must see and avoid obvious hazards. The patron in the display areas does not have this burden because his attention is attracted to the items displayed on the shelves of the store.
In this case, the evidence shows that the entire parking lot was cleaned at 2:00 a. m., the night before the accident. The store manager testified that he arrived at the store at 7:00 a. m., and inspected the area of the accident, as was his custom. He stated that the Coca Cola bottle was not there. Vanda Bailey, a cashier at the store, arrived at about 8:00 a. m., and entered the store via the ramp at the right hand end of the wall. She testified that the area was clean, and that, if she had seen anything, *692 she would have picked it up. Except for the lot being swept twice a week, and the manager's morning inspection, no other regular inspection or clean-up measures were taken. All employees, including the bag boys, were instructed to look for foreign objects and substances both inside and outside the store, and to remove any which they might see. There is no testimony touching on how long the bottle had been on the surface of the parking lot, except for that of the manager and Mrs. Bailey.
Since Mrs. Bolin proved that she slipped and fell on a foreign object, and was injured thereby, a presumption of negligence arises as to the defendant. We think that the jury could reasonably have found that the efforts of the defendant to keep the parking lot in a reasonably safe condition were not sufficient to exculpate it from the presumption of negligence and we find no manifest error in that conclusion.
A more difficult question is presented as to the contributory negligence of Mrs. Bolin. It cannot be disputed that a 16-ounce Coca Cola bottle is a large and readily observable object. Mrs. Bolin testified that, when she stepped down onto the surface of the parking lot, she was not looking down to see where she was stepping, but was looking ahead at her automobile. Plaintiffs point out that the bottle was lying at the edge of the curb, at the corner formed by the ramp, and could not be readily seen by one approaching from the store because of the partition and the curb. The jury must have concluded that the bottle was not readily observable by a reasonably prudent person approaching from the store because of its location. We find no manifest error, since there is some evidence from which their conclusion could reasonably be reached.
On the question of quantum, we note that Mrs. Bolin fell and was injured on January 19, 1975. She was seen the same day by Dr. F. C. McMains, an orthopedic surgeon. He found that she had suffered a sprain of one foot and of the low back. The foot injury cleared up in about ten days, but her back symptoms got steadily worse and she was admitted to the hospital on March 20, 1975, for conservative treatment. When she did not respond, Dr. McMains consulted with Dr. Thomas B. Flynn, a neurosurgeon, who first saw her on March 31, 1975.
Dr. Flynn performed a myelogram and on April 2, 1975, operated on Mrs. Bolin and found a ruptured disc. She was discharged from the hospital on April 6, 1975. Dr. Flynn felt that Mrs. Bolin's recovery was good, despite her continued complaints of pain, which he thought to be psychosomatic in origin. In February, 1976, he readmitted her to the hospital for conservative treatment because of her complaints of leg and back pain. She was discharged on February 9, 1976, in improved condition.
On April 21, 1976, she was still complaining of back pain, but presented no objective symptoms. On August 16, 1976, she was complaining of severe right leg pain and back pain, and Dr. Flynn suggested a myelogram, which was not done.
On September 10, 1976, Mrs. Bolin suffered a fall, and was admitted to the hospital with a concussion, and complaining of pain in the right hip and leg. A myelogram was performed, which indicated a recurrence of the herniation of the disc. Disc surgery was again performed by Dr. Flynn. Mrs. Bolin's recovery from that surgery was uneventful.
She was left with a permanent disability variously estimated by the physicians at from ten to 25 per cent. Dr. McMains was of the opinion that Mrs. Bolin would have to greatly curtail her activities as a result. Dr. Flynn did not feel that the disability was functional, and that Mrs. Bolin could lead a normal life.
Both Dr. McMains and Dr. Bernard Manale, an orthopedic surgeon who evaluated Mrs. Bolin on two occasions, were of the opinion that all of her difficulty and both of her operations were caused by the fall on January 19, 1975. Dr. Flynn was of the opinion that Mrs. Bolin had recovered from the first operation by the end of 1975. He testified that her subsequent difficulties *693 were either psychosomatic or caused by the fall of September 10, 1976. He did not relate the second operation to the accident of January 19, 1975.
The jury awarded Mrs. Bolin $10,000.00 for her pain, suffering and disability. Obviously, Dr. Flynn's testimony was accepted by the jury in its entirety, and such a finding is not manifestly erroneous. We think the award of $10,000.00 is low, but not so low as to constitute an abuse of the great discretion accorded the finder of fact.
The judgment appealed from is therefore affirmed. Defendant shall pay all costs.
AFFIRMED.