580 So.2d 420 (1991)
Robert Dale HALL and Patricia Hall, Plaintiffs-Appellants,
v.
PETRO OF TEXAS, INC. and American Fire and Casualty Insurance Company, Defendants-Appellees.
No. 22403-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1991.
Writ Denied September 6, 1991.
*421 John Haas Weinstein, Ltd. by John Haas Weinstein, Patrick J. Mangan, Opelousas, for plaintiffs-appellants, Robert and Patricia Hall.
Weems, Wright, Schimpf, Hayter & Carmouche by Carey T. Schimpf, Robert B. Dunlap, II, Shreveport, for plaintiffs-appellants, Robert and Patricia Hall.
Cook, Yancey, King & Galloway by Sidney E. Cook, Jr., Shreveport, for defendants-appellees, Petro of Texas and American Gen. Fire & Cas. Ins. Co.
Before SEXTON, NORRIS and HIGHTOWER, JJ.
SEXTON, Judge.
The plaintiffs, Robert and Patricia Hall, appeal the trial court judgment which rejected their claim for damages against the defendants, Petro, Inc., and its liability insurer, American General Fire & Casualty Company. The trial court found no liability on the part of the defendants in this slip and fall case. We affirm.
The defendant is the owner and operator of an 18- to 20-acre truck stop complex in Shreveport. Included on the property is a *422 self-service gasoline and convenience store, a truck stop and diesel fueling station, a truck lube shop, and a restaurant. Approximately 120 Petro employees work at the complex.
On Thursday, August 20, 1987, between 3:00 and 5:00 p.m., the plaintiff, Robert Hall, and his son, Jim Hall, purchased gasoline and soft drinks at the self-service convenience store owned by Petro. After paying for the items, as he was on his way back to his vehicle, the plaintiff slipped and fell in an oil spot located outside the store in the driving lane between the store and a fuel pump island.
The plaintiffs[1] filed suit on December 4, 1987, seeking damages for Mr. Hall's injuries. On March 29, 1989, the parties submitted the case to the trial court based on stipulations, exhibits, depositions, and other documents agreed to be admitted into evidence by the parties. In a thorough opinion, the trial court found that the plaintiff did slip in an oil spot which was, more probably than not, approximately the size of a quarter. Although this constituted a hazardous condition, the trial court found it was more probably than not created by a customer and not by a Petro employee. The trial court reviewed Petro's inspection and cleaning procedures and found they were reasonable and adequate to rebut any presumption of negligence. Moreover, the trial court found that the plaintiff did not maintain reasonable attentiveness or he would have seen and avoided the oil spot. A judgment rejecting plaintiffs' demands was signed on May 16, 1990.
A merchant owes a duty to his customers to exercise reasonable care to keep his premises, including the aisles, passageways, and floors, free of hazardous conditions. LSA-R.S. 9:2800.6 A;[2]Kavlich v. Kramer, 315 So.2d 282 (La.1975); Estes v. Kroger Company, 556 So.2d 240 (La. App.2d Cir.1990), writ denied, 559 So.2d 1360 (La.1990). However, the merchant is not the insurer of his customer's safety. Estes v. Kroger Company, supra; Dickson v. Wal-Mart Stores, Inc., 535 So.2d 800 (La.App.2d Cir.1988).
To establish a prima facie case in a slip and fall lawsuit under circumstances such as exist in this case, the plaintiff must prove that he suffered injury as a result of a hazardous condition while on the merchant's premises, that he slipped in a foreign substance, which resulted in his injury. LSA-R.S. 9:2800.6 B; Estes v. Kroger Company, supra. The burden then shifts to the merchant to exculpate itself from the presumption that it was negligent. LSA-R.S. 9:2800.6 B; Kavlich v. Kramer, supra; Estes v. Kroger Company, supra. The merchant's burden of proof is twofold. The merchant must prove both that its employees did not cause the hazard and that it exercised such a degree of care that it would have known under most circumstances of a hazard caused by customers. Brown v. Winn-Dixie Louisiana, Inc., 452 So.2d 685 (La.1984); Estes v. Kroger Company, supra. The merchant's duty of care requires that reasonable protective measures, including periodic inspections, are undertaken to ensure that the premises are kept free from substances that might cause a customer to fall. Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976); Ritchie v. S.S. Kresge Company, Inc., 505 So.2d 831 (La.App.2d Cir.1987), writ denied, 507 So.2d 227 (La.1987). Whether the protective measures were reasonable must be determined in light of the circumstances of each case, considering, commensurate with the risk involved, the merchant's type and volume of merchandise, the type of display, the floor space utilized for customer service, the volume of business, the time of day, the section of the store, and other such considerations. Brown v. Winn-Dixie Louisiana, Inc., supra; Gonzales v. Winn-Dixie Louisiana, Inc., supra.
*423 The issue of the duty of care owed by the merchant in this case is somewhat complicated by the fact that this accident occurred outside the physical confines of the store. We note that there is support for plaintiff's position that the same duty of care is owed by the store owner both inside and outside the store. See Rutledge v. Brookshire Grocery Co., 523 So.2d 914 (La.App. 3rd Cir.1988), writ denied, 531 So.2d 269 (La.1988); Bolin v. National Tea Company, 359 So.2d 690 (La.App. 1st Cir. 1978), writ denied, 362 So.2d 577 (La.1978). This court has not followed this line of jurisprudence, declining to extend the high duty of care owed to customers inside a store to encompass those customers outside the store. Sellers v. Caddo Parish Commission, 503 So.2d 1073 (La.App. 2d Cir.1987), writ denied, 506 So.2d 1229 (La. 1987). See also Dickson v. Wal-Mart Stores, Inc., supra at 808 ("As to assumed obvious hazards created by precipitation in a customer parking lot, the respective comparative duty of the store owner and the customer should not be as divergent or disproportionate as inside the store where the customer's attention is directed to displayed merchandise and away from the floor.").
We again decline to extend the high duty of care owed by a merchant to a customer inside the store to this plaintiff while outside the store. We note that the rationale behind the high standard of care owed to a customer inside a store stems predominately from the nature of the consumer business. The customer inside a store is visually assaulted, enticed by shelves of items, displays and other attractions designed to capture his attention and increase his purchases. The customer's eyes are intentionally diverted away from the floor and he is thus less able to detect hazardous conditions that he may encounter while walking. This factor, combined with the self-service nature of the displays, whereby customers will physically handle the merchandise  increasing the risks of spills and breakages  necessitates thorough inspection and protective measures inside the store. These same concerns are not as pertinent outside the store; there are fewer displays and enticements to divert a customer's attention, nor is there the same likelihood that customers would inadvertently spill or break display items. We note also that the distinction between the duty of care inside a store versus outside a store would also generally stem from a consideration of the factors outlined supra for considering the reasonableness of the merchant's protective measures. Factors such as the volume of merchandise, the type of display and the floor space utilized for customer service would generally point to an increased risk of hazardous conditions and a corresponding need for more stringent protective measures inside the store.
Turning to the facts of the instant case, the plaintiff clearly established that he slipped and fell in an oil spot while on the Petro premises which resulted in his injuries. The oil spot constituted a hazardous condition; the trial court so held and neither party disputes that conclusion. The issue on appeal, therefore, is whether the trial court erred in finding that Petro exculpated itself from the presumption that it was negligent.
The initial step of Petro's two-part burden of proof was to show that its employees did not cause the hazardous condition. The trial court found that it was more probable than not that the oil spot was caused by a customer rather than a Petro employee. In light of the self-service nature of the gas station and the location of the oil spot in the driving lane next to the self-service pumps, the trial court's finding is amply supported by the record. The plaintiff does not seriously dispute this conclusion.
The ultimate issue on appeal is whether Petro's protective measures, including its inspection procedures, were reasonably adequate under the circumstances. The protective measures were discussed by Bud Cates, the fuel manager, and Larry Ramsey, one of two maintenance men who were employed by Petro.[3] Every Wednesday *424 morning, the Petro complex is completely and thoroughly cleaned. The two maintenance employees, Ramsey and Powell, apply a commercial detergent and water solution to the concrete to absorb oil and the area is blocked off while it soaks. The concrete is then rinsed and cleaned with a steam cleaner and then a squeegee is used and the area is allowed to dry. Following the Wednesday cleaning, there is an inspection by all of the complex's managers. The self-service gasoline and convenience store area passed its Wednesday inspection on the day preceding this accident. During the remainder of the week, the complex is spot cleaned in a corresponding fashion. Although the thoroughness of Wednesday's cleanup was not intentionally limited to that day by Petro, Mr. Cates acknowledged that the Wednesday morning cleanup has become the most thorough because of the Wednesday afternoon inspection. Thorough cleanup is performed throughout the week. However, aside from Wednesday, that cleanup is limited to areas noticeably in need of cleaning.
Mr. Ramsey testified that his daily inspection procedure involves at least three inspections of the self-service gasoline and convenience store area, at 7:30 a.m., at noon, and at 2:30 p.m. Any oil spots or other hazardous conditions would be cleaned as described above. Daily between 3:00 and 3:30 p.m., Mr. Cates does a general inspection of the complex including the self-service gasoline and convenience store area. Mr. Cates generally leaves at 5:00 p.m. and thereafter, any oil spills or other problem areas are left to the discovery of security officers and employees inside the convenience store. The security officers and other employees do not actually perform inspections after 5:00 p.m., but are instructed to report any spills that they notice. Additionally, Petro customers will on occasion report spills that they notice. Any oil spills after 5:00 p.m. are reported to janitors who are on duty 24 hours a day, who then remedy the problem.
In light of the reduced duty of care owed by Petro outside the store, the inspection and cleaning procedures were reasonably and sufficiently adequate to rebut the presumption of negligence. Following the thorough Wednesday cleanup, the inspection by Petro managers found the self-service gasoline and convenience store area clean and free of any hazardous conditions. Prior to the Thursday afternoon accident, Mr. Ramsey made three inspection passes through the self-service gasoline and convenience store area, the last coming at approximately 2:30 p.m. Thereafter, Mr. Cates made one further inspection of the area between 3:00 and 3:30 p.m. The trial court was not in error in finding Petro had exculpated itself from the presumption of negligence.
Finally, we reject plaintiff's argument that Petro failed in its burden of proof by neglecting to call as witnesses all employees whose job responsibilities included, to some extent, inspection and cleanup of the self-service gasoline and convenience store area, as required by LSA-R.S. 9:2800.6 C. Specifically, plaintiff argues that Ms. Shirley Walsworth, the convenience store cashier on duty at the time of the accident, as well as the janitor and the security guard, should have been called as witnesses. The janitor and security guard did not report for work until 5:00 p.m.; the evidence reveals this accident occurred prior to their coming on duty. These two witnesses would have added nothing to the issue of the reasonableness of the inspection and cleanup prior to the accident. Testimony of other Petro employees revealed that Ms. Walsworth was no longer employed by Petro and her whereabouts were apparently unknown. We note that an affidavit was submitted by Ms. Walsworth in which she described the aftermath of plaintiff's accident. Her duties, however, did not include active inspections of the area outside the convenience store. She was to report any oil spills visible from her cashier's position inside the store. Petro presented sufficient evidence to satisfy its burden of proof, and it was not necessary to call these three witnesses who were not directly responsible for cleanup and inspection *425 of the self-service gasoline and convenience store area prior to this accident. See Morgan v. Stanley Stores, Inc., 550 So.2d 733 (La.App. 2d Cir.1989).[4]
In conclusion, we find no error in the trial court's opinion that Petro's protective measures, including inspections, were reasonable and sufficient to overcome the presumption of negligence. Accordingly, the judgment is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Mrs. Hall sought damages for loss of consortium.
[2] All citations to LSA-R.S. 9:2800.6 refer to the original version of the statute enacted by Louisiana Acts 1988, No. 714, which was in effect at the time of trial. The statute has since been amended by Louisiana Acts 1990, No. 1025. At oral argument, appellant waived his assignment of error alleging that LSA-R.S. 9:2800.6 was not applicable to this case.
[3] Petro's other maintenance employee, David Powell, was not at work on the date of the accident, Thursday, being one of his days off. His testimony was therefore not required.
[4] Although the cited case was not decided under the provisions of LSA-R.S. 9:2800.6, the rationale is nevertheless appropriate and actually more persuasive. Prior to the enactment of LSA-R.S. 9:2800.6, a merchant's duty to call his employees as witnesses in a slip and fall case was even more stringent, being governed by the intimation in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987) that a merchant must call all his employees to prove they did not cause the spill. LSA-R.S. 9:2800.6 was enacted in response to McCardie to ease the merchant's burden of proof. See Morgan v. Stanley Stores, Inc., supra at 735, n. 1; Brown v. Schwegmann Giant Supermarkets, Inc., 535 So.2d 1307, 1308, n. 1 (La.App. 5th Cir.1988), writ denied, 538 So.2d 595 (La.1989).