589 So.2d 43 (1991)
Clara ALLEN
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., et al.
No. 90 CA 1157.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
*44 Randall J. Cashio, Baton Rouge, for plaintiff-second appellant Clara Allen.
*45 Michael W. McKay, Baton Rouge, for defendant-first appellant the Great Atlantic & Pacific Tea Co., Inc.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
Plaintiff, Clara Allen, filed a personal injury action against The Great Atlantic & Pacific Tea Company, Inc. (A & P) following an incident on September 2, 1986, when she stepped on a 1½-inch anchor bolt protruding from the entrance walkway to the A & P store at College Drive, Baton Rouge, Louisiana. On January 17, 1990, the trial court rendered judgment in favor of plaintiff for a total of $142,136.18, which reflected 25 percent reduction for plaintiff's negligence. Both parties have appealed.
On the morning of Ms. Allen's accident, A & P's store manager, Len Brown, removed a loose guide rail from the entrance to the store. Mr. Brown was aware that the removal left an anchor bolt protruding from the surface of the walkway at a point a few feet away from the doors. Anticipating the hazard that the protruding bolt could present to customers entering the store, Mr. Brown placed a plastic milk crate over the bolt. Unfortunately, the crate kept disappearing, and Mr. Brown had to have it replaced twice before Ms. Allen's accident. The parties do not dispute the fact that there was no milk crate or any other device in sight to warn customers about the bolt at the time Ms. Allen stepped on it.
When Ms. Allen initially approached the A & P, she mistakenly approached the exit door instead of the entrance door. She realized her error when the exit door swung open in front of her. At that point she moved to her left and encountered the bolt.
The trial court handled the issues of the liability of the defendant and the negligence of the plaintiff succinctly, as follows:
The initial issue for determination is liability vel non. On this issue the Plaintiff must prevail inasmuch as there was a defect in Defendant's premises which posed an unreasonable risk of harm to Plaintiff and which was the cause of the Plaintiff's injury, i.e., the protruding anchor bolt. However, the Court is convinced that the Plaintiff was negligent in failing to see the anchor bolt and avoid it and this negligence was a contributing factor in her accident and injury. Weighing the negligence of the parties, in the exigent circumstances on the delicate scales of justice the Court finds Defendant 75% and Plaintiff 25% comparatively negligent.
We agree with the trial court that the defendant was liable, but we do not agree with attributing 25% fault to the plaintiff.
On appeal the defendant assigns as error the trial court's finding that the protruding bolt presented an unreasonable risk of harm. A & P argues that the accident occurred outside its store in a shopping center, and that there is no evidence in the record of who had custody or garde of the common area outside the entrance to the store. According to the defendant, the lack of evidence of custody bars a finding that defendant's premises were defective.
The above argument is untenable for the simple reason that A & P, through its store manager Mr. Brown, not only had knowledge of the hazardous condition but actually created the hazardous condition. The knowledge of the defendant obviates the necessity for the distinction between a strict liability action pursuant to LSA-C.C. art. 2317 and a negligence action pursuant to LSA-C.C. art. 2315. See Kent v. Gulf States Utilities Co., 418 So.2d 493 (La. 1982). Accordingly, we find that the trial court was correct in concluding that A & P was liable for Ms. Allen's injuries.
The act of the plaintiff that the trial court labeled "negligent" was her failure to see the bolt. We disagree. The facts of Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990) are on "all fours" with the instant case. The Louisiana Supreme Court found that a patron at a restaurant who tripped over a one-inch elevation at the *46 doorway was not contributorily negligent so as to reduce the award of damages to her. The court noted that business establishments should anticipate that not all their invitees automatically look down while entering the premises. Furthermore, the cost of preventing future falls was minimal, and the finding of liability created an incentive to remove the unreasonable risk of harm. Although the Sistler case was an Article 2317 case, the policy rationale is apropos in the instant case because we are dealing with the negligent maintenance of business premises. We conclude that the trial court clearly erred in finding Ms. Allen negligent for failing to see the protruding bolt. There was no evidence introduced to support a proposition that the bolt was so highly visible that Ms. Allen was unreasonable in failing to notice it as she approached the store. Indeed, the evidence of record strongly suggests otherwise: that Mr. Brown recognized the likelihood that customers would not see the bolt unless it was protected by the milk crate. Accordingly, we reverse the judgment of the trial court finding Ms. Allen 25 percent at fault.
Before we reach the issue of damages, we must consider one other contention concerning the allocation of fault. The defendant urges error on the part of the trial court for failure to allocate a percentage of fault to the doctors who treated Ms. Allen pursuant to LSA-C.C.P. art. 1917. This argument was prompted by the following language in the trial court's reasons for judgment:
The Court is convinced the Plaintiff has been over treated and over charged by some of her treating physicians. The Plaintiff (sic) injury began as a relatively minor one and has degenerated into a serious one with the assistance of modern medical science and excessive treatment.
The fallacy of defendant's argument derives from the fact that defendant has taken the above-quoted remark of the trial judge out of context. The quoted remarks were made after the trial judge had determined liability and percentages of fault. The remarks were a mere attempt by the trial judge to justify his calculations of quantum. The trial judge's opinions concerning the medical treatment received by Ms. Allen were not factual findings of the doctors' fault. As they relate to the trial court's holdings of liability and comparative fault, the remarks are mere dicta. Furthermore, LSA-C.C.P. art. 1917 only requires a finding of third party fault "where appropriate." In the instant case, third party fault was not pled, nor was evidence presented. A finding of third party fault would not be appropriate in this case. See LSA-C.C.P. art. 1812C(2); Mack v. Transport Insurance Co., 577 So.2d 112, 117-118 (La.App. 1st Cir.1991). Accordingly, we find that this assignment of error by the defendant is meritless.

QUANTUM
The troublesome aspect of this case is the amount of damages which should have been awarded to Ms. Allen. From the trial judge's remarks it is apparent that he was shocked by the number of treatments received by Ms. Allen and the cost of those treatments. On appeal plaintiff avers that the trial court erred in rejecting the uncontradicted medical testimony pertaining to the need for future medical treatment and attendant costs. We cannot say the trial court abused its discretion in awarding $5,000.00 for future medical expenses.[1] Even if we were to accept the testimony of plaintiff's anesthetist as sufficient proof of the plaintiff's need for treatment in a detoxification program, the plaintiff failed to present admissible evidence of the costs of detoxification treatment. Furthermore, we agree with the trial court that the anesthetist's plan for continued treatment with nerve blocks and epidurals appears to be unrealistic. The trier of fact is required to weigh the testimony of all witnesses, including the medical expert witness. See Freeman v. Rew, 557 So.2d 748 (La.App. 2d Cir.), writ denied, 563 So.2d 1154 (La.1990).
*47 The award of $5,000.00 for future medical care is supported by other evidence in the record, and we will not disturb this portion of the trial court's decision.
On appeal the plaintiff argues that it was incongruous for the trial court to award her $150,000.00 for pain and suffering while finding that her medical condition and resulting pain did not prohibit her from returning to work as a deli clerk. We agree.
In denying plaintiff any award for lost earnings, past or future, the trial judge stated that Ms. Allen's pain in her right foot was "not of such intensity or severity as to constitute a legitimate reason" not to work. The trial judge's conclusion is clearly wrong because the record is replete with evidence of Ms. Allen's significant pain. She experienced such intense pain that she consented to and endured surgery and numerous epidural injections. There is objective evidence of her pain in the reduced shoe size of the injured foot, attributed by the medical witnesses to atrophy from nonuse.
Accordingly, we reverse the trial court's denial of this part of plaintiff's claim, and amend the judgment in her favor to include an amount for past and future loss of earning capacity.
Because plaintiff was unemployed at the time of the accident sued upon, her economic claim is one for loss or impairment of earning capacity. Loss or impairment of earning capacity is determined by subtracting plaintiff's earning ability after the injury from her earning ability immediately prior to the injury; the focus is not on her earnings per se. See Carter v. State Farm Mutual Auto. Ins. Co., 548 So.2d 53 (La.App. 3d Cir.1989).
Dr. Randolph Rice was plaintiff's expert economist. He computed Ms. Allen's economic loss to be $25,915.00 from the date of the accident, September 2, 1986, until the date of trial, November 21, 1989. He also calculated her work life expectancy at 12.4 years. If Ms. Allen is currently capable of working a 20 hour week at the new minimum wage level for 12.04 years, her loss of earning capacity would be $43,719.00. The economist used a nominal growth rate of five percent and a discount rate of eight percent. When the two figures are added together, we arrive at a total economic loss of $68,634.00. Nevertheless, we cannot attribute plaintiff's failure to work from the date of the accident until trial and her anticipated inability to work in the future totally to the foot injury. Ms. Allen had a long history of illnesses and injuries, and we conclude from the record that her preexisting condition accounts for one half of her loss of earning capacity. Consequently, we will amend the judgment to award the amount of $34,317.00 (one-half of $68,634.00) for loss of earning capacity, past and future.
Finally plaintiff complains that the $150,000.00 award for pain and suffering is too low. We find the award was neither too high nor too low considering the "much discretion" of the judge in making such an award. See Reck v. Stevens, 373 So.2d 498 (La.1979).
Accordingly, we amend the trial court judgment to delete the reduction for comparative fault of the plaintiff. This deletion increases the award made by the trial court from $142,136.18 to $189,514.90. This sum added to $34,317.00 for loss of earning capacity equals $223,831.90, the total principal amount of plaintiff's damages owed by defendant. We also cast defendant for all costs of this appeal.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] The trial court specified that its views on the overcharges and over treatment did not reduce the award for past medical expenses, as such a reduction is proscribed by the jurisprudence.