702 So.2d 79 (1997)
Mary RICHARD, Plaintiff-Appellant,
v.
WAL-MART STORES, INC., Defendant-Appellee.
No. 29926-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1997.
Writ Denied February 6, 1998.
*81 David Hilburn, Bossier City, for Appellant.
Barham & Warner by Vicki C. Warner, Shreveport, for Appellee.
Before NORRIS, WILLIAMS and STEWART, JJ.
STEWART, Judge.
In this slip and fall case, Mary Richard (plaintiff), appeals the judgment of the trial court in the amount of fault apportioned to her, the size of the award for general damages and lost wages, lack of an award for lost earning capacity and lack of an award for the cost of expert witnesses. Additionally, the plaintiff contends that the issue addressed in the Answer to the Appeal filed by Wal-Mart Stores, Inc. (Wal-Mart) has already been addressed by this court in Docket Number 29, 426-CW. We amend and affirm, as amended we remand for further proceedings.

FACTS
On June 11, 1991, Mary Richard (plaintiff) was on her way into the Wal-Mart Store located on Jewella Road in Shreveport, Caddo Parish, Louisiana. It was a clear sunny day. On the sidewalk in front of the store, Wal-Mart employees had placed several lawn and garden sale items on display. As the plaintiff stepped from the parking lot up onto the sidewalk of Wal-Mart, she tripped over a metal plate with four bolts, 1-1½ inch each, sticking up out of the middle of the plate. The plate was there to hold a "no parking, fire lane" sign pole. The pole had been removed at some point prior to the accident. The plaintiff fell on her left knee and right cheek. She tried to catch herself with her right arm, resulting in a small avulsion fracture in the right wrist and a cut on her knee.
The plaintiff was 25 to 30 feet from the front door of the store when she stepped upon the sidewalk. The plaintiff testified that the sidewalk was full of large plants, shrubbery and trees that were stacked against the building. The plaintiff further testified that despite the merchandise on the sidewalk, there was room for customers to walk on the sidewalk.
At the time of the accident, the plaintiff was sixty-one (61) years old and unemployed. She had recently completed a contract as a division order analyst with Arkla Gas and was in a rest period. The plaintiff worked for twenty-five (25) years as a division order analyst in the oil and gas business; she sewed and gardened.
After a three-day jury trial, a verdict was rendered in favor of the plaintiff and against Wal-Mart. The jury found Wal-Mart 30% at fault, plaintiff 70% at fault, and awarded past medical expenses in the amount of $1,642.00, past lost wages $10,000, and pain and suffering in the amount of $8,000. The jury did not make an award for future medicals or lost earning capacity. Judgment was paid to the plaintiff in the amount of $7,107.61, reflecting the 70% reduction.
A devolutive appeal was perfected by the plaintiff. Wal-Mart filed a Motion to Dismiss the Appeal on grounds of abandonment for failure of the plaintiff to pay the appeal costs. After a hearing, the court ordered *82 plaintiff to pay appeal costs within ten days from June 17, 1996. However, the appeal costs were not paid by July 15, 1996 and the court issued a Judgment of Dismissal on July 16, 1996. In response thereto, plaintiff filed a motion to vacate the judgment dismissing the appeal. After a hearing on the matter, the court vacated the judgment dismissing the appeal of the plaintiff and reinstated the devolutive appeal. Wal-Mart sought supervisory writs of the decision of the trial court to reinstate the appeal. This court denied the writ application on December 12, 1996 and stated, "On showing made, the supervisory jurisdiction of this court is not warranted. We detect no palpable error in the trial court's ruling." Nevertheless, on March 26, 1997, Wal-Mart answered this appeal and again asserted that the trial judge committed a reversible error by reinstating plaintiff's appeal after dismissing it for failure to pay costs.

REINSTATING THE PLAINTIFF'S APPEAL
First, the plaintiff contends that Wal-Mart's answer to this appeal, alleging that the trial court erred in reinstating the appeal of the plaintiff, was addressed by this court in the denial of the supervisory writ on the same issue. After consideration of the writ application filed by Wal-Mart and the brief filed by the plaintiff, this Court determined that the trial court "committed no palpable error" in reinstating the appeal.
Plaintiff relies upon La. C.C.P. Art. 2166 to support the argument that Wal-Mart has had its day in court on the issue of the timeliness of the appeal and "the judgment of a court of appeal becomes final and definitive if neither an application for rehearing nor an application to the Supreme Court for a writ of certiorari is timely filed."
Wal-Mart argues that the trial court was wrong in vacating its prior judgment dismissing the appeal of the plaintiff and reinstating the devolutive appeal of plaintiff, as plaintiff's check for payment of appeal costs was returned NSF, plaintiff knew costs were due when motion to dismiss for abandonment was filed, and plaintiff still failed to pay costs after the court granted ten day extension. The burden to pay fees to perfect an appeal is on plaintiff. Wal-Mart relies on L.C.C.P. Art. 2126(E) to support its position that the plaintiff's failure to pay costs is an error imputable to the appellant, making the dismissal of the appeal proper.
The "law of the case" principle applies in the instant case. The "law of the case" principle is merely a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. However, the law of the case principle is not applied in cases of palpable error or where, if the law of the case were applied, manifest injustice would occur. Ward v. Hermitage Ins. Co., 28,236 (La.App. 2 Cir. 4/3/96) 671 So.2d 1229.
We have already ruled on Wal-Mart's writ application concerning the dismissal of the appeal and found no observable trial court error. We see no reason to revisit the issue.

APPORTIONMENT OF FAULT
An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless the finding is clearly wrong. Lewis v. State through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State through DOTD, 617 So.2d 880 (La.1993); Lebeaux v. Newman Ford, Inc., 28-609 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Lewis v. State through DOTD, supra; Stobart v. State through DOTD, supra; Lebeaux v. Newman Ford, Inc., supra.
In apportioning fault, the trial court must consider "both the nature of the conduct of each party at fault and the extent of the causal relationship between the conduct *83 and the damages claimed." Theriot v. Lasseigne, 624 So.2d 1267, 1275 (La.App. 3 Cir. 1993); Watson v. State Farm Fire and Casualty Insurance Company, 469 So.2d 967 (La. 1985).
A trial court's findings regarding percentages of fault are factual and will not be disturbed on appeal unless clearly wrong. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Baughman v. State through DOTD, 28,369 (La.App. 2 Cir. 5/8/96), 674 So.2d 1063. The Louisiana Supreme Court stated that "In reviewing determinations of proportionate fault, we have previously compared the respective degrees of duty of the various parties and degree of causation in the parties' breach of their respective duties." Socorro v. City of New Orleans, supra at 942.
In assignment of error number one, plaintiff argues that the jury verdict apportioning 70% of the fault to the plaintiff is unreasonable and should be reversed with no more than 20% of the fault apportioned to the plaintiff. The plaintiff cites cases in which no more than 0-25% comparative fault was attributed to the plaintiff who slipped in material on Wal-Mart's floor inside the store. Plaintiff further argues that, although this accident occurred outside on the sidewalk, because items were on display for sale, the same standards are applicable as if the accident occurred inside the store.
Wal-Mart counters that this court has declined to extend the high duty of care owed to customers inside a store to encompass those customers outside the store, citing Hall v. Petro of Texas, Inc., 580 So.2d 420 (La. App. 2d Cir.1991). "The customer inside a store is visually assaulted, enticed by shelves of items, displays and other attractions designed to capture his attention ... These same concerns are not as pertinent outside the store; there are fewer displays and enticements to divert a customer's attention, nor is there the same likelihood that customers would advertently spill or break display items." Hall, supra at 423. Wal-Mart further asserts that the cases cited by the plaintiff are inapplicable as they involve incidents inside the store and do not support the argument that plaintiff's fault should be decreased.
We note that there is a distinction between those accidents occurring inside a store and those happening outside of the store, in a store's parking lot. Store owners are subject to a higher standard of care inside the store. Inside the store, "the store owner owes an affirmative duty to those who use his premises to exercise reasonable care to keep aisles, passageways, and floors in a safe condition." Kavlich v. Kramer, 315 So.2d 282, 284 (La.1975). That duty includes reasonable effort to keep objects off of the floor that might give rise to a slip and fall. Id at 284.
In Bolin v. National Tea Co., 359 So.2d 690 (La.App. 1st Cir.1978), writ denied, 362 So.2d 577 (La.1978), the duty owed by a store owner to a plaintiff injured in a slip and fall outside of a store was considered. In Bolin, a plaintiff was injured in a slip and fall accident that occurred outside of the store. As plaintiff stepped off the curb, her foot struck a 16-ounce Coca Cola bottle causing plaintiff to fall and suffer injuries. The plaintiff testified that she was not looking down to see where she was stepping and that the bottle was at the edge of the curb and could not be readily seen by a reasonably prudent person because of its location at the edge of the curb. The store owner's efforts to keep the parking lot in reasonably safe condition were found to be insufficient to exculpate it from the presumption of negligence.
The Bolin court found "that a storekeeper has the same duty to keep such areas in a reasonably safe condition, and he may not permit hazardous conditions of which he has actual or constructive notice, to exist. On the other hand, the patron in areas outside the store is charged with using reasonable care for his own safety, and must see and avoid obvious hazards. The patron in the display areas does not have this burden because his attention is attracted to the items displayed on the shelves of the store." Bolin at 691. The Bolin case makes clear the distinctions between the heavy burden placed on the storekeeper in a slip and fall inside *84 the store and a slip and fall outside of the store, such as the parking lot.
Business establishments should anticipate that not all their invitees automatically look down while entering the premises. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). In Sistler, the Louisiana Supreme Court found that a patron at a restaurant who tripped over a one-inch elevation at the doorway was not contributorily negligent so as to reduce the award for damages to her.
Similarly, in Allen v. Great Atlantic & Pacific Tea Co., Inc., 589 So.2d 43, (La.App. 1st Cir.1991), a retail store was held liable for a patron's slip and fall injuries resulting outside the store. The customer was found not negligent in failing to see the anchor bolt protruding from the entrance walkway to the retail store, where there was no evidence introduced to support the proposition that the bolt was so highly visible that the customer was unreasonable in failing to notice it as she approached the store and the retail store manager recognized the likelihood that customers would not see bolt and repeatedly covered it with a milk crate. The parties did not dispute the fact that there was no milk crate or any other device in sight to warn customers about the bolt at the time the plaintiff stepped on it. The store manager had knowledge of the hazardous condition. "The knowledge of the defendant obviates the necessity for the distinction between a strict liability action pursuant to LSA-C.C. art. 2317 and a negligence action pursuant to LSA-C.C. art. 2315". Allen v. Great Atlantic & Pacific Tea Co., Inc., supra. Also see Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982).
To establish a prima facie case in a slip and fall lawsuit, the plaintiff must prove that he suffered injury as a result of a foreign object while on the merchant's premises, that he slipped on the foreign object, which resulted in his injury. Once the plaintiff proves that he slipped and fell on a foreign object, a presumption of negligence arises as to the defendant store owner. The burden then shifts to the merchant to exculpate himself from the presumption that he was negligent. LSA-R.S. 9:2800.6(B); Rutledge v. Brookshire Grocery Co., 523 So.2d 914 (La.App. 3rd Cir.1988); Bolin v. National Tea Co., supra.
The presumption of negligence may be rebutted by the defendant showing that reasonable precautions were taken to prevent such hazards. The merchant's duty of care requires that reasonable protective measures, including adequate cleanup measures and periodic inspections, must be undertaken to ensure that the premises are kept free from substances that might cause a customer to fall. Bolin v. National Tea Co., supra.
The defendant may also rely on a showing of contributory negligence by the plaintiff in not using reasonable care to avoid obvious hazards. Bolin at 692. On the other hand, there are potential reasonable distractions that could hinder a patron's ability to see and avoid such hazards when walking outside of a grocery store, such as when carrying bags, a patron is unable to look down and see where he is walking. Dupor v. Schwegmann Brothers Giant Super Markets, Inc., 400 So.2d 239 (La.App. 4th Cir.1981), writ denied, 406 So.2d 611, 611-612 (La.1981).
In the instant case, the plaintiff was walking toward the entrance of Wal-Mart when her attention was diverted by the store's outside display of sale merchandise, causing plaintiff to not look down to see where her foot would land on the store's sidewalk. The plaintiff stepped upon the curb where her foot struck the four 1-1½ inch bolts protruding from a metal plate on the sidewalk, causing plaintiff to fall and suffer injuries. The presence of the bolts, a foreign object, on the defendant's sidewalk served as a major factor in causing the plaintiff to trip and fall, thereby creating a presumption of the store keepers negligence.
Wal-Mart's argument to rebut the presumption of negligence rest upon the effort by Wal-Mart to keep the premises free of any hazardous condition which reasonably might give rise to damage. The protective measures taken by Wal-Mart included a Wal-Mart employee's unsuccessful attempt to remove the bolts, a telephone call by the manager to the home office to have someone from construction come out to remove the *85 metal plate and the placement of a shopping cart upside down over the metal plate and protruding bolts. Wal-Mart further asserts that the plaintiff was at fault in failing to look down to see where she was stepping and in not using reasonable care to avoid an obvious hazard.
The issues are whether Wal-Mart proved that it was reasonably prudent in its efforts to keep the area in a reasonably safe condition, free of any hazardous conditions so that it exculpates itself from the presumption of negligence and whether the protective measures were reasonable in light of the circumstances and the risk involved. It is undisputed that there were four 1-1½" bolts protruding from a metal plate on the sidewalk of the store that Wal-Mart had actual knowledge, and that the store manager was advised of the bolts protruding from a metal plate by a customer before the plaintiff's fall. In response thereto, the store manager went outside to examine the sidewalk and then direct an employee to remove the metal plate and bolts. After receiving a report from the employee that the bolts could not be removed, the store manager had a lightweight shopping cart placed upside down over the protruding bolts by a Wal-Mart employee.
Furthermore, the record shows that the plaintiff was the second customer to shop at the store that day to notify the store manager of the bolts protruding from a metal plate. The store manager testified that he was on the telephone with the construction manager making arrangements to have the sidewalk repaired when the plaintiff came to the service desk to report her fall. The store manager then went outside with the plaintiff after her fall to find that the lightweight shopping cart was not covering the protruding bolts.
An important factor in determining the reasonableness and adequacy of Wal-Mart's safety procedures is the time of the accident. Johnson v. Wal-Mart Stores, Inc., 24,646 (La.App. 2 Cir.1993) 616 So.2d 817. Testimony revealed that there was no shopping cart or any other device in sight to warn patrons about the protruding bolts at the time the plaintiff stepped upon the sidewalk. The plaintiff was using the premises as they were intended to be used. There were no signs, warning, or indicators to draw her attention to or notified her of the hazardous condition. The store manager testified that the area was not roped off because a shopping cart was placed upside down over the area and that it would be difficult to rope off the area because it was right against the road.
However, Wal-Mart stipulated that there were any number of items in Wal-Mart that they could have used to block off the area, "all kinds of merchandise from microwave ovens to bags of dog food," as a precautionary measure. The cost to Wal-Mart to protect customers from an unreasonable risk of harm was minimal, as the merchandise in the store was readily available. Instead, Wal-Mart employees placed a lightweight shopping cart, which could be removed easily, over the protruding bolts and metal plate. Wal-Mart's efforts to secure the area to protect customers from a known danger were less than aggressive, posing an unreasonable risk of harm.
After reviewing Wal-Mart's precautionary measures, we find that the procedures used by Wal-Mart were not reasonably prudent to keep the premises in a reasonably safe condition, nor were the protective measures reasonable in light of the circumstances and the risk involved. The shopping cart, that could be easily removed, was not covering the bolts and metal plate at the time the plaintiff tripped and fell on the sidewalk. Wal-Mart had a superior capacity to act because its employees knew that the bolts were protruding from the sidewalk. The store manager testified the bolts protruding from a metal plate was brought to his attention about mid-afternoon by a customer. He went outside to look at the sidewalk. The store manager notified a maintenance employee and the construction manager for the store.
As for Wal-Mart's assertion that the plaintiff was contributorily negligent for failing to see and avoid an obvious hazardous condition, the record shows that Wal-Mart had an outside store display of garden center sale items, a sidewalk sale. The plaintiff's fault in failing to see the hazardous condition was extenuated by her attention to Wal-Mart's *86 sidewalk sale of plants, fertilizer, dirt and other garden items on display. The plaintiff testified that she was looking at these things as she stepped up on the sidewalk. The plaintiff could not reasonably have anticipated that Wal-Mart's sidewalk would have bolts protruding therefrom.
Wal-Mart's sidewalk sale created a reasonable distraction that hindered the plaintiff's ability to see and avoid the hazard when walking outside of the store. Wal-Mart's outside display was a sidewalk sale of merchandise designed and arranged to capture the customers' attention in the same manner as the merchandise inside the store. The instant case is distinguishable from previously decided cases because Wal-Mart's sidewalk sale created outside the self-service nature of the displays inside, whereby customers will physically handle the merchandise.
Typically, outside the store there are fewer displays and enticements to divert a customer's attention, with less likelihood that customers will inadvertently spill or break display items. However, in the instant case these same concerns are as pertinent outside the store. Wal-Mart's sidewalk sale caused the plaintiff to be visually assaulted, enticed by rows of garden center items, plant displays and other gardening items, thereby intentionally diverting the plaintiff's attention away from the sidewalk. The plaintiff's ability to see and avoid the hazard was further hindered by the fact that the silver-gray color of the plate, bolts, sidewalk and parking lot blended to create an illusion of a flat surface.
Wal-Mart is at fault in having a metal plate with four 1-1½" bolts protruding from the sidewalk, creating an unreasonable risk of harm which was reasonably foreseeable. Wal-Mart had actual knowledge of the four bolts protruding from the metal plate. Wal-Mart failed to take more diligent and reasonable precautionary measures to secure the area. Wal-Mart failed to make periodic inspections of the area, which lead to actual discovery that the shopping cart was not there. Wal-Mart's negligence was a cause in fact of the plaintiff's injury.
We find that Wal-Mart failed to take reasonable protective measures to keep the store premises in a reasonably safe condition, free of objects which might cause customers to slip and fall, and failed to conduct periodic inspections to ensure that the premises were safe. Therefore, Wal-Mart violated their duty to keep the store premises in a reasonably safe condition which resulted in the plaintiff's fall and Wal-Mart's liability.
The jury's allocation of 70% fault to the plaintiff was against the weight of the evidence, and was clearly wrong. Therefore, we look to the Watson factors to determine the percentage of fault:
In assessing the nature of the conduct of the parties to a negligence action, various factors may influence the degree of fault assigned, including: whether conduct resulted from inadvertence or involved awareness of danger, how great a risk was created by conduct, significance of what was sought by conduct, capacities of actor, whether superior or inferior, and any extenuating circumstances which might require actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967.
There is a direct causal relationship between the four 1-1½ inch bolts protruding from the Wal-Mart's sidewalk, Wal-Mart's failure to take reasonable precautions to prevent such hazards, permitting the condition to exist and the plaintiff's trip and fall. There is no evidence in the record to suggest that the four 1-1½ inch bolts were so highly visible that the plaintiff was unreasonable in failing to notice them as she stepped up on the sidewalk. The plaintiff testified that the color of the metal plate blended into the concrete, "the sidewalk and everything, just gray". Evidence, testimony and photographs, supports the conclusion that the 7-10 inch metal plate with four 1-1½ inch bolts protruding from the sidewalk was not readily observable by a reasonable prudent person approaching the store because the silver-gray color of the plate, bolts, sidewalk and parking lot blended, creating an optical illusion of a flat surface.
Wal-Mart's failure to act reasonably must be balanced against the plaintiff's conduct in *87 not looking down as she stepped up on Wal-Mart's sidewalk distracted by the sidewalk sale. The plaintiff's attention was diverted by the sidewalk sale, causing the plaintiff to not look down to see where her foot would land and making plaintiff's failure to look down only an indirect causative impact on the slip and fall. The plaintiff could not reasonably anticipate bolts protruding from Wal-Mart's sidewalk. In contrast, Wal-Mart was fully aware of the unreasonably hazardous condition in permitting the four 1-1½ inch bolts protruding from the sidewalk to exist, and that the possibility of injury was imminent. The failure to remove the bolts or take a more aggressive approach to secure the area had a direct potential for accident or injury.
Wal-Mart's omissions were not dictated by any emergency or other circumstances which could lessen the fault attributed to its violating the duty to keep the premises in a reasonably safe condition and to not permit hazardous conditions of which it had actual or constructive notice to exist. No extenuating circumstances existed that would have required Wal-Mart to proceed in haste, without proper thought. There were any number of items in stock in the store that could have been used to secure the area and protect the customers from an unreasonable risk of harm.
Finally, with regard to capacity, Wal-Mart has a superior capacity to act because its employees knew that the bolts were protruding from the sidewalk and the experience of Wal-mart requires greater imposition of fault for their negligent conduct, in comparison to that of the 61-year-old plaintiff. Wal-Mart's efforts to keep the parking lot in a reasonably safe condition were not sufficient to exculpate it from presumption of negligence.
The application of the Watson factors require a reapportionment of the parties fault and suggest that a lesser degree of fault be attributed to the plaintiff. We conclude that the highest degree of fault the jurors could have assigned to the plaintiff is 0%, where Wal-Mart breached the duty of care that requires that reasonable protective measures, including adequate cleanup measures and periodic inspections, must be undertaken to ensure that the premises are kept free from substances that might cause a customer to fall. Wal-Mart's efforts to keep the area reasonably safe were insufficient.

GENERAL DAMAGE AWARD
In assignment of error number two, plaintiff contends that the jury erred as a matter of law in only awarding $8,000 in general damages and that the general damage award should be increased. The plaintiff cites cases in which the plaintiffs suffered injuries similar to the plaintiff in the instant case and the general damages award ranged from $20,000 to $30,000.
However, Wal-Mart asserts that the appropriate procedure for testing whether the trial court abused its discretion by making an excessive or inadequate award is to determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. Kessler v. Southmark Corp., 25,941 (La. App.2d 9/21/94), 643 So.2d 345. Wal-Mart asserts that the evidence supports the award in this case, as plaintiff did not lose consciousness, completed her shopping and only suffered a two to three month injury. Therefore, the award of $8,000 was reasonable and should not be disturbed.
In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the court held that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy of the award should be determined by the facts or circumstances particular to the case under consideration. An appellate court should rarely disturb award of general damages since discretion vested in trier of fact is "great". The standard for review is nonspecific, and only when the award, in either direction, is beyond that which reasonable trier of fact could assess for effects of particular injury to particular plaintiff under particular circumstances should an appellate court increase or reduce award. Youn, 623 So.2d at 1261; *88 Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
In the instant case, the plaintiff's trip and fall resulted in cutting her left knee, hitting her right cheek and falling on her right hand. She got up from the sidewalk and went into the Wal-Mart to inform management of her accident. After completion of the accident report and first aid treatment, the plaintiff completed her shopping and went home. The next day, she went to the family doctor with a swollen wrist, complaining of pain. The plaintiff was diagnosed with an avulsion fracture of the right radial styloid.
The plaintiff's orthopaedic surgeon, Dr. Craig Springmeyer, testified that on July 3, 1991, there was minimal swelling of plaintiff's wrist. On July 24, 1991, the swelling was gone but her range of motion was still limited. About three months later, on September 11, 1991, the plaintiff was doing better. Although the fracture healed in approximately 6-8 weeks, the plaintiff continued to complain of pain.
However, Dr. Springmeyer testified that he did not see the plaintiff again until eighteen months later, in March, 1993. At that time, Dr. Springmeyer began checking for carpal tunnel syndrome and suspected a small ganglion cyst. He referred the plaintiff to Dr. Eric Bicknell for tests. According to Dr. Springmeyer's testimony, Dr. Bicknell's August 1993, report suggested mild to moderate right carpal tunnel syndrome.
Later in March 1994, Dr. Springmeyer diagnosed the plaintiff as having a small ganglion cyst, carpel tunnel syndrome and tendonitis (de Quervain's tenosynovitis). However, Dr. Springmeyer testified he could not say that it was more probable than not that plaintiff's carpel tunnel syndrome or the small ganglion cyst on plaintiff's wrist, which came to light eighteen (18) months or so after the fall was caused by the fall at Wal-Mart. Nor could he testify that it is more probable than not that the tendonitis, or the symptoms associated it, was more probable than not as result of the fall because it came to light almost three years after the fall. In fact, the only objective finding that Dr. Springmeyer could relate that was more probable than not to the plaintiff's fall was the avulsion fracture that was noted on plaintiff's first visit and healed in approximately six weeks.
Dr. Springmeyer testified that "the most common cause of carpel tunnel syndrome is overuse with daily activities. Most people in their job on their normal dailyactivities of daily living use their wrist with motion a lot, grabbing things, and the tendons become inflamed. You can have traumatically-induced carpel tunnel also."
The record reflects that the plaintiff's daily activities included gardening and that working as a division order analyst for 25 years required the daily use of a ten-key adding machine and typing on a keyboard to input data. Further, plaintiff testified that she always used her right hand to operate the ten-key adding machine and never used her left hand. In addition, plaintiff had a drapery business in the 1980's and was involved in the hands on making of the drapes. These daily activities are commensurate with Dr. Springmeyer's explanation of the most common cause of carpel tunnel syndrome as overuse with daily activities.
In light of the record, the jury could have reasonably relied upon the uncontradicted testimony of Dr. Springmeyer that plaintiff's small ganglion cyst, carpel tunnel syndrome and tendonitis (de Quervain's tenosynovitis) could not definitely be attributed to the fall. There is no causal connection between the fall and the plaintiff's small ganglion cyst, carpel tunnel syndrome and tendonitis. We must accept that the jury awarded the plaintiff an amount which it considered would adequately compensate plaintiff for all the damages and injuries it reasonably believed were caused by the slip and fall. We find no abuse of discretion on behalf of the trial court in setting the general damage award at $8,000. This assignment of error is without merit.

LOSS OF EARNING CAPACITY
In assignment of error number three, the plaintiff contends that the trial court erred in not awarding damages for loss of earning *89 capacity based upon the testimony of vocational rehabilitation experts.
Wal-Mart counters that the jury determined that plaintiff's injury was not a disabling injury based upon the testimony of her treating orthopedist, Dr. Springmeyer, who did not assign any disability rating to her. Further, the record reflects that prior to the accident the plaintiff's earnings fluctuated. The plaintiff testified that she must limit her earnings in order to continue receiving social security from her husband's disability. There is no evidence that the plaintiff actually missed any work or had to decline work because of the incident.
"A plaintiff who seeks to recover for loss of earning capacity must prove the extent of her injuries resulting from accident and also has burden of proving that the injuries she sustained have incapacitated her from, in future, doing work of reasonable character, that is, work for which she was fitted by training and experience, of same or similar kind in which she was engaged at the time of the accident." Maranto v. Goodyear Tire & Rubber Co., 25,114 (La.App. 2 Cir. 5/10/95), 661 So.2d 503.
The testimony of Dr. Springmeyer reveals no causal connection between the fall and the plaintiff's small ganglion cyst, carpel tunnel syndrome and tendonitis. In fact, the only objective finding that Dr. Springmeyer could relate that was more probable than not to the plaintiff's fall was the avulsion fracture that was noted on plaintiff's first visit, which healed in approximately six weeks. Dr. Springmeyer did not assign any disability rating to the plaintiff. The evidence and testimony does not support the plaintiff's claim that the tendonitis, ganglion cyst or carpel tunnel syndrome resulted from the accident or incapacitated her from working. Therefore, we find that the jury did not abuse its discretion by not awarding the plaintiff damages for loss of earning capacity.
This assignment of error number three is without merit.

LOST WAGES
In assignment of error number four, the plaintiff asserts that the trial court erred in only awarding $10,000 for lost wages. The plaintiff testified that she had been unable to work because of pain she suffers to this date as a result of the accident. At the time of trial, it had been thirty-nine (39) months since plaintiff had done any substantial work.
Wal-Mart counters that the testimony of the plaintiff's economist, Dr. Christiansen, was based upon erroneous information and assumptions, that he relied only upon 1991 tax returns showing 4½ months of wages and that he did not take into account any part-time work that plaintiff engaged in during the months after the injury. Dr. Christiansen further testified that if he had calculated the plaintiff's earnings for 1988, 1989, and 1990, in addition to 1991, and accounted for odd jobs, then his projection would have been a lower number. Therefore, Wal-Mart asserts that the jury awarded the plaintiff a fair amount for past lost wages as the evidence does not support a greater award.
The loss of past earnings is the monetary loss the plaintiff experience between the accident and trial. Although lost earnings need not be precisely proven, they must be shown with reasonable certainty. Carter v. Brookshire Grocery Co., 29,166 (La.App. 2 Cir. 2/26/97) 690 So.2d 933; Moore v. Chrysler Corporation, 596 So.2d 225 (La.App. 2d Cir.1992), writs denied, 599 So.2d 316, 317 (La.1992); Finley v. Bass, 478 So.2d 608 (La.App. 2d Cir.1985). An award for lost past wages can be computed on the amount the plaintiff would have in all probability been earning at the time of trial. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Maynor v. Vosburg, 25922 (La. App.2d Cir. 11/28/94), 648 So.2d 411, writ denied, 95-0409 (La.4/28/95), 653 So.2d 590. To recover, a plaintiff must show proof to reasonably establish his claim. Weber v. Brignac, 568 So.2d 1129 (La.App. 5th Cir. 1990).
In the instant case, the testimony of economist, Dr. Christiansen, does not show that the amount calculated as lost wages is reasonably certain. Dr. Christiansen's economic study to value the plaintiff's lost wages was based upon the adjusted gross income of plaintiff's 1991 tax return and did not take *90 into account the fact that the plaintiff worked after the accident. He further testified that had he taken these facts into account the amount for lost wages would be a lower number.
Past lost earnings are susceptible of mathematical calculation from proof offered at trial and require such proof as reasonably establishes the claim. The jury could have reasonably found that the expert's figures did not show with reasonable certainty the amount of lost wages, as those figures did not include the part-time work that plaintiff engaged in during the months after the injury.
The jury could have reasonably determined that the plaintiff's failure to work after the accident was not attributable to the plaintiff's injuries and further determined that the entirety of plaintiff's injuries were not related to the slip and fall at Wal-Mart. The plaintiff was unemployed at the time of the accident. She had recently finished a contract with Arkla Gas and was in a rest period. There is no evidence that she had another contract or turned down a contract to work because of her injury. The plaintiff's physician testified that the avulsion fracture healed in approximately six weeks. In fact, the plaintiff worked for National Rental Car and Custom Fit Alteration Shop in 1992.
We cannot find the jury clearly wrong in making the award. The jury has broad discretion in assessing credibility and making its factual findings. Warner v. Great Atlantic & Pacific Tea Co., Inc., 22,496 (La.App. 2nd Cir.1991) 583 So.2d 61. Considering all of the testimony and evidence regarding the plaintiff's award for lost wages, we cannot say that the trial court abused its discretion in weighing the evidence and making the award.
Assignment of error number four is without merit.

EXPERT WITNESS FEES
In assignment of error number five, the plaintiff asserts that the trial court erred in not assessing the expert witnesses' fees of the plaintiff as court costs against Wal-Mart. At trial, Dr. Christensen, Dr. Galloway and Dr. Springmeyer all testified on behalf of the plaintiff as expert witnesses. The plaintiff argues that the fees of expert witnesses are to be taxed as court costs absent some showing why they should not be.
Wal-Mart counters that plaintiff's counsel prepared the judgment which does not enumerate the expert witnesses' fees, that plaintiff's counsel signed a receipt and satisfaction of judgment which stated that it was "inclusive of court costs" and that plaintiff raised no objection to the calculation of court costs at that time. Wal-Mart further contends that the plaintiff cannot now seek an increase in court costs which were not specifically included in the final judgment. In the alternative, Wal-Mart seeks to have the court remand this issue to the trial court for a determination of an appropriate award for the expert witnesses' fees.
It is undisputed that there was expert witness testimony at the trial. However, the record is unclear as to the exact amount of the fee associated with each expert witness. An expert is entitled to reasonable compensation for his appearance in court and for preparatory work done by him. La.-R.S. 13:3666(A). La.-R.S. 13:3666(B) states in part that "[t]he court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment ..." Therefore, we find that the expert witnesses' fees should be assessed as costs, thus we remand this issue to the trial court for determination of the appropriate award for the expert witnesses' costs and payment thereof.

DECREE
For the foregoing reasons, the judgment of the district court is affirmed except as to the apportionment of fault and expert witnesses' costs. The judgment of the trial court is modified as to the percentage of fault, which are fixed at 0% for the plaintiff and 100% for Wal-Mart Stores, Inc. The judgment of the trial court is remanded for the determination of an appropriate award for the expert witnesses' fees. All costs are assessed against the appellee Wal-Mart.
*91 AFFIRMED IN PART, MODIFIED IN PART, and REMANDED.